944 P.2d 508

**PIMA COUNTY, Plaintiff/Appellant,**

v.

**PIMA COUNTY MERIT SYSTEM COMMISSION; Elsa Mulhern, Richard Martinez, Charlyne Abett, John Dablow, Georgia Brousseau; in their official capacities as members; Patricia Mathis, Defendants/Appellees.**

No. 2 CA–CV 95–0083.

Court of Appeals of Arizona, Division Two, Department B.

April 24, 1997.

As Corrected on Denial of Rehearing Aug. 12, 1997.

---

568

Stephen D. Neely, Pima County Attorney by Mary Judge Ryan, Tucson, for Plaintiff/Appellant.

Lola Clayton Rainey, P.C. by Lola Clayton Rainey, Tucson, for Defendant/Appellee Mathis.

## OPINION

DRUKE, Chief Judge.

The Pima County Attorney dismissed Patricia Mathis from her job as an advocate in its Victim Witness Program by letter dated May 19, 1993. Mathis appealed her dismissal to the Pima County Employee Merit System Commission. After several hearings, the Merit Commission revoked the dismissal and ordered Mathis reinstated with back pay. The county attorney sought review in the superior court, which affirmed the Merit Commission after reviewing the hearing transcripts. The county attorney appeals to this court, claiming that because Mathis admitted many of the charges against her, the Merit Commission abused its discretion in revoking her dismissal. We agree and remand to the Merit Commission for further proceedings consistent with this opinion.

■ The County Employee Merit System authorizes the "appointing authority" of a county to dismiss, suspend, or reduce in rank or compensation a classified civil service employee "by written order, stating specifically the reasons for the action." A.R.S. § 11–356(A). Because the Merit Commission acts as a quasi-judicial body, *Woerth v. City of Flagstaff,* 167 Ariz. 412, 808 P.2d 297 (App. 1991), it determines the credibility of witnesses, *Lathrop v. Arizona Bd. of Chiropractic Examiners,* 182 Ariz. 172, 894 P.2d 715 (App.1995), reconciles conflicting evidence, *DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 686 P.2d 1301 (App.1984), and weighs the sufficiency of the evidence presented. *Zavala v. Arizona State Personnel Bd.,* 159 Ariz. 256, 766 P.2d 608 (App.1989). The Merit Commission may then "affirm, modify or revoke" the appointing authority's order. § 11–356(C).

■ To affirm or revoke the order, the Merit Commission determines whether the action taken by the appointing authority was arbitrary or taken without reasonable cause. *Pima County v. Pima County Merit Sys. Comm'n,* 186 Ariz. 379, 923 P.2d 845 (App. 1996); *Maricopa County v. Gottsponer,* 150 Ariz. 367, 723 P.2d 716 (App.1986). Arbitrary action "means unreasoning action, without consideration and in disregard of the facts and circumstances." *Tucson Pub. Sch. Dist. No. 1 of Pima County v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972). If the Merit Commission determines the evidence does not support the charge giving rise to the action taken, it must revoke the order because the action taken was arbitrary or taken without reasonable cause. On the other hand, if the Merit Commission determines the evidence supports the charge, thus war-

ranting some action by the appointing authority that is not otherwise prohibited, the Merit Commission may modify the order only if it further determines that the action taken is " 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.' " *Petras v. Arizona State Liquor Bd.*, 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App.1981), *quoting 17 Cameron St. Restaurant Corp. v. New York State Liquor Auth.*, 48 N.Y.2d 509, 423 N.Y.S.2d 876, 877–78, 399 N.E.2d 907, 909 (1979). *See also Pima County Merit Sys. Comm'n; Gottsponer.* Absent such further determination, the Merit Commission must affirm the action taken. *Id.*

A party dissatisfied with the Merit Commission's decision may seek review by the superior court pursuant to the Administrative Review Act. §§ 12–901 to 12–914. Upon review, the superior court determines whether the Merit Commission acted illegally, arbitrarily, or capriciously, or whether it abused its discretion. *Gottsponer.* Absent a trial de novo, the superior court does not weigh the evidence, but only determines whether substantial evidence supports the Merit Commission's findings. *Williams v. Pima County*, 164 Ariz. 170, 791 P.2d 1053 (App.1989); *City of Tucson v. Mills*, 114 Ariz. 107, 559 P.2d 663 (App.1976). The superior court does not decide whether the record supports the appointing authority's version of the facts, but whether it supports the Merit Commission's factual findings. *Carondelet Health Servs. v. AHCCCS*, 182 Ariz. 502, 897 P.2d 1388 (App.1995). These same standards of review apply on appeal from the superior court to this court. *Havasu Heights Ranch and Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 807 P.2d 1119 (App.1990). Whether substantial evidence supports the Merit Commission's findings is a question of law determined independently by this court. *Berenter v. Gallinger*, 173 Ariz. 75, 839 P.2d 1120 (App. 1992).

In revoking Mathis's dismissal, the Merit Commission made specific findings regarding the six charges against her and a general finding that the county attorney had "failed to prove by a preponderance of the evidence that the charges were justified." The county attorney contends the Merit Commission abused its discretion in so finding because Mathis admitted many of the facts alleged in support of the charges. We review the evidence to determine if it supports the county attorney's contention. If it does, the Merit Commission could not revoke Mathis's dismissal, but could only either affirm it or, if it shocked one's sense of fairness, modify it. *Pima County Merit Sys. Comm'n; Gottsponer.*

## NEGLECT OF DUTY

The county attorney first charged Mathis with neglect of duty, meaning she gave her duties "little attention or respect." *Merriam–Webster's Collegiate Dictionary* 777 (10th ed. 1995). The charge arose from Mathis's assignment to the juvenile court by the Victim Witness Program Director, Viki Sharp. Mathis was to assist advocate Evelyn Hacelett two days each week, from 8:30 a.m. to 11:30 a.m. The county attorney alleged in its letter of dismissal to Mathis:

> You did not perform the tasks required of you at Juvenile Court. You were requested to make contact with victims, even if you were unclear about specific answers. You did not accomplish this, you left early and one day that [Hacelett] was on vacation, you did not report to Juvenile.

The Merit Commission found that "Ms. Mathis attempted to perform the duties assigned to her at Juvenile Court. However, because she was unfamiliar with the computer system and had not received adequate training, Ms. Mathis was not qualified to perform the assigned tasks." While this finding, which the evidence supports, generally addresses the allegation that Mathis "did not perform the tasks required of" her, it does not address the remaining three allegations.

The second allegation asserts that Mathis failed to "make contact with victims, even if you were unclear about specific answers." Sharp testified that after she had assigned Mathis to juvenile court, Mathis came to her and said "she felt that she did not have enough training at juvenile court to do the

job appropriately." Sharp said she instructed Mathis

> that even if she did not know specific answers or she was having some problem with the computer, that I wanted her to make contact with the victims to take the calls or to respond to those and at least find out what the victims' questions or concerns were so she could forward to [Hacelett] or could find out later what the correct responses were.

At the hearing, Mathis testified she told Hacelett, "you know, I refuse to [re-victimize] victims by getting on the phone and telling them just anything. I won't do that. If there's something I can tell them, I will tell them; if I don't know, I'm not going to do it." Mathis thus admitted she did not follow Sharp's instructions, but felt her behavior was justified. Mathis also admitted the third allegation that she left juvenile court early, but again justified her action by explaining that she "had to be back at the main office . . . at 12:00. So I had to leave [the juvenile court], I had to eat. . . ." Finally, Mathis did not refute the fourth allegation that she failed to report to juvenile court "one day that [Hacelett] was on vacation." The undisputed evidence thus established that Mathis neglected three of her duties at the juvenile court.

## DISHONESTY

■ The county attorney next contends that Mathis admitted the charge of dishonesty, which means "a willful perversion of truth in order to deceive, cheat, or defraud." *Merriam–Webster's Collegiate Dictionary* 333. In support of the charge, the dismissal letter set forth the following allegations against Mathis:

> On March 27, 1993, you rode the crisis unit when you were not assigned. You did not notify the volunteer coordinator or acting program supervisor. The paperwork from the evening did not reflect your name, but the name of the volunteer originally scheduled to ride the unit. When questioned the following Monday by the volunteer coordinator, you requested that he not tell anyone and you would take care of it.

These records are legal documents and your actions were clearly dishonest.

The Merit Commission found that "Ms. Mathis rode the crisis unit on March 27, 1993 without being scheduled, but she had not falsified nor been dishonest about the error on the activity log." The county attorney concedes Mathis did not falsify the activity log; it was falsified without Mathis's knowledge by the volunteer with whom Mathis had ridden that evening. The county attorney nonetheless argues that the following testimony by Mathis amounts to an admission that she attempted to cover up the falsified log:

> I didn't see the [log. When the volunteer coordinator] came up . . . and showed me the [schedule of who was to ride] and said that [J.S.] was supposed to ride that night and she didn't. I said that's right. So he said, did you? I said, yes, but don't tell anybody. He said why? I said, well, just don't tell anybody.

Mathis later testified that she did not want to explain to the volunteer coordinator why she had ridden instead of J.S. because she "wanted to be the one to tell [her supervisor]." Mathis also stated that she was not trying to get the volunteer coordinator to "do something dishonest or assist [her] in covering up anything." As noted previously, it was for the Merit Commission to determine credibility and it chose to believe Mathis. Where the record supports two inconsistent factual conclusions, then substantial evidence supports the conclusion the Merit Commission elects to adopt. *Webster v. State Bd. of Regents,* 123 Ariz. 363, 599 P.2d 816 (App.1979). The county attorney thus failed to establish the dishonesty charge.

## WILFUL DISOBEDIENCE

■ The county attorney also charged Mathis with wilful disobedience, a "refusal . . . to obey." *Merriam–Webster's Collegiate Dictionary* 334. The dismissal letter alleged that Mathis was told by "the acting program supervisor Marty Olson . . . that you were not to attend the disaster drill at [Davis–Monthan Air Force Base]. When [Olson] left the office, you then approached Kathy Heitzmann in an effort to leave the office and

attend the disaster drill." The Merit Commission found that Mathis was not "disobedient with respect to the ... disaster drill," specifically finding that she "did not attend the drill." Although the county attorney concedes on appeal that Mathis did not attend the disaster drill, it argues that Mathis was wilfully disobedient because she "badgered" Olson "to get her to change her decision," and when that failed, she approached Heitzmann "to get permission to attend." Mathis gave a different version of what happened.

[When I asked Olson if I could go, s]he said, did [Sharp] say you couldn't go? I said no. I said, what [Sharp] said was that it was her inclination that I should not go. So she said, well, I don't know, go ask Heitzman[n]. I went and asked Heitzman[n] and she said to me, what did [Olson] say? I said, [Olson] said come and ask you.

So [Olson] and Heitzman[n] got together and then Heitzman[n] said, the reason we don't want you to go is in case a crisis call comes up. I said, but I've got two people to replace me. She said, no, you need to stay here in case a crisis call comes up.

If believed, this testimony established that Mathis obeyed rather than disobeyed her superiors. The Merit Commission's finding shows it believed Mathis; again, it was for the Merit Commission to decide whether Mathis was credible.

## DISCOURTEOUS TREATMENT
## OF THE PUBLIC

The county attorney further charged Mathis with discourteous treatment of the public. The county attorney alleged in the dismissal letter that while Mathis was "attending a hearing at Juvenile Court, you turned to a victim and remarked that the juvenile defendant in the case was 'a little bitch.'" Various witnesses testified that the Victim Witness Program had a policy prohibiting the use of profanity in public. Mathis admitted and the Merit Commission found that she had made the statement "in the presence of an adult victim and a peer worker [Hacelett]." The Merit Commission nevertheless determined that the charge had not

been established because it additionally found that no evidence was presented "suggesting others had heard or complained about" the statement and that the victim, a corrections officer, "did not appear to have been adversely affected" by it. While the record supports these additional findings, they cannot excuse or justify the statement. Mathis herself acknowledged that while Victim Witness advocates occasionally made derogatory statements among themselves about defendants during court proceedings, such a statement would be improper if, as here, "it's audible to other people in the courtroom." Because Mathis admittedly violated the policy prohibiting profanity in public, she was necessarily discourteous to the public and the Merit Commission erred in finding otherwise. "[A] finding of misconduct may be based upon the violation of some implicit standard of good behavior imposed upon the one who maintains a special position in the public eye." *Mills,* 114 Ariz. at 111, 559 P.2d at 667. That the victim may not have been affected or offended by Mathis's statement would be relevant only in determining the fairness of the sanction imposed.

## MISUSE OF COUNTY PROPERTY

The county attorney additionally charged Mathis with misuse of county property, alleging the following in the dismissal letter:

On March 12, 1993, a crisis car was found with very little gasoline and police radios unsecured in the vehicle. Routine maintenance was also neglected on vehicles. There were also reports of driving the vehicle in excess of 70 miles an hour to respond to calls, which is clearly against policy.

The Merit Commission found that the

[t]estimony did not substantiate the claim that Ms. Mathis drove in a reckless manner. Ms. Mathis passed other vehicles when she drove, but it was not determined that she drove the vehicle in excess of 70 miles per hour to respond to calls. Evidence did not include any speeding tickets that Ms. Mathis might have obtained.

The evidence, although conflicting, supports these findings. But the findings do not address the first allegation that "[o]n March 12, 1993, a crisis car was found with very little gasoline and the police radio unsecured in the vehicle." As to this allegation, Mathis agreed it was her job to insure that the vehicles were "gassed up" at the end of each shift and that the radios and pagers had been secured. She testified that on March 12, 1993, she "had had back-to-back crisis calls" and "hadn't had time to eat." She said she parked the vehicle in the garage and locked it with the radio inside, intending to return after dinner to gas the vehicle; that when she returned, she found the garage locked; that she went home, intending to return to the garage early the next morning to gas the vehicle; that she was unable to do so because she went into anaphylactic shock that evening from the food she had eaten and was hospitalized; and that she called the office after she was released from the hospital and "left a message on the [answering] machine explaining what had happened." Contrary to the county attorney's argument, this does not establish misuse of county property. Misuse means "to use incorrectly," abuse or mistreat. *Merriam–Webster's Collegiate Dictionary* 745. While Mathis may have been neglectful with respect to county property, she did not incorrectly use, abuse, or mistreat either the vehicle or the radio.

## MISCELLANEOUS CHARGES

Finally, the county attorney charged that Mathis 1) used abusive, profane, or obscene language; 2) failed to establish and maintain effective relationships with others by "making threats and vicious statements regarding co-workers" and being "unprofessional and rude" to program volunteers; and 3) based on complaints from "law enforcement officers and University Medical Center personnel," failed to treat the general public in a courteous manner. As to the first two charges, the Merit Commission found that Sharp created a relaxed atmosphere at work, which allowed employees to relieve stress and "voice their feelings," that Mathis and other staff members "commonly used profanity," and that such language "was acceptable in the work place because it provided a release mechanism for staff members." The evidence supports these findings. Sharp encouraged her staff to express their feelings and permitted profanity except, as noted above, when members of the public were present.

The Merit Commission made no specific finding as to the third charge and therefore its general finding applies, which was that the county attorney failed to prove the charge "by a preponderance of the evidence." While the Merit Commission heard evidence of complaints from certain law enforcement officers and University Medical Center personnel, it also heard evidence that the complaints were either unfounded or not specifically directed at Mathis but at the whole Victim Witness Program. The Merit Commission weighed this evidence, a matter solely within its province, and found it insufficient to support the third charge.

## CONCLUSION

We conclude from our review of the record that the evidence established the charges of neglect of duty and discourteous treatment of the public. Because these charges warranted taking action, the county attorney did not act arbitrarily or without reasonable cause, and the Merit Commission erred in revoking the action taken. It could only affirm the action or modify it. *Pima County Merit Sys. Comm'n; Gottsponer.* Accordingly, we remand the matter to the Merit Commission to decide whether to affirm the dismissal or modify it with a less severe sanction. To modify the dismissal, the Merit Commission must determine whether the action taken, in light of all the circumstances, is so disproportionate to the charges that it shocks one's sense of fairness. *Gottsponer.* While we recognized the subjectivity of this test in *Pima County Merit Sys. Comm'n,* the Merit Commission may, on remand, consider the factors set forth there as well as others it deems relevant to this case.

Reversed and remanded for further proceedings consistent with this opinion.

ESPINOSA, J., and JAMES D. HATHAWAY, Judge (Retired), concur.