FILED BY CLERK

JUL 25 2005

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| PINAL COUNTY, | ) | 2 CA-CV 2004-0160 |
| | ) | DEPARTMENT B |
| Plaintiff/Appellant, | ) | |
| | ) | **O P I N I O N** |
| v. | ) | |
| | ) | |
| PINAL COUNTY EMPLOYEE MERIT | ) | |
| SYSTEM COMMISSION and RICHARD | ) | |
| SERB, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV2003-00715

Honorable William J. O'Neil, Judge

REVERSED AND REMANDED

---

| | |
|---|---|
| Green & Baker<br>  By Katherine E. Baker and Diane L.<br>Bornscheuer | Scottsdale<br>Attorneys for Plaintiff/Appellant |
| | |
| Fitzgibbons Law Offices, P.L.C.<br>  By Denis M. Fitzgibbons<br><br>  and<br><br>Bihn & McDaniel, P.L.C.<br>  By Martin A. Bihn | Casa Grande<br><br><br><br><br>Phoenix<br>Attorneys for Defendant/Appellee<br>Richard Serb |

P E L A N D E R, Chief Judge.

¶1        The Pinal County Sheriff's Department (PCSD) terminated appellee Richard Serb's employment as a PCSD detention officer after he assaulted a fully restrained inmate. Serb appealed to the Pinal County Employee Merit System Commission ("Commission") pursuant to A.R.S. § 11-356(B).  After an evidentiary hearing, the Commission overturned PCSD's termination decision, without imposing any other disciplinary measure, and granted Serb's request for reinstatement with full back pay and benefits.  PCSD then filed this action for judicial review. *See* A.R.S. §§ 11-356(D), 12-901 to 12-914.  Based on its administrative review of the record, the superior court affirmed the Commission's decision and awarded attorney fees to Serb.  On appeal, appellant Pinal County argues the Commission erred in revoking PCSD's disciplinary action.[1]  We agree and, therefore, reverse the decisions of the superior court and the Commission.

## BACKGROUND

¶2        Although the material facts are undisputed, as the parties acknowledged at oral argument in this court, we review the evidence adduced at the hearing and reasonable inferences therefrom in the light most favorable to upholding the Commission's decision.

_____

[1]Although PCSD was the named plaintiff and appeared as such in the caption throughout the proceedings below, the superior court apparently concluded Pinal County, not PCSD, was the proper party, and the notice of appeal and briefs were filed on behalf of the county.

*See Rios Moreno v. Ariz. Dep't of Econ. Sec.*, 178 Ariz. 365, 367, 873 P.2d 703, 705 (App. 1994). In August 2002, Serb was on duty in the Pinal County Jail when he observed an inmate sliding a note under the door of a cell. When Serb ordered him to stop, the inmate cursed at him, walked to another cell, and slid another note under the door. Serb then ordered the inmate to "lock down" by returning to his cell and closing the door. The inmate again cursed at Serb, who repeated the order to "lock down." The inmate then started walking away from his cell, so Serb left his desk to meet him. The inmate continued cursing but returned to his cell and slammed the door closed "so hard that it popped back open."

¶3          Serb entered the cell, and the inmate took "an aggressive stance." Serb placed him in handcuffs, took him to the "attorney booth," and went back to check on the rest of the unit. While in the "attorney booth," the inmate kicked and banged on the door and was "verbally abusive" to officers walking past. When Serb and another officer went in to talk to the inmate, he continued his "verbal abuse." The inmate again made an "aggressive move," and the officers restrained him. They took the inmate to the "multi purpose room" and put him in a "restraint chair," leaving one hand free.[2]

¶4          Another officer later reported to Serb that the inmate had removed some screws from a nearby electrical outlet. Serb and his sergeant went to the room, took the screws from the inmate, and restrained his other hand. Serb told the inmate he would be

_____

[2]When placed in a "restraint chair," an inmate is bound to the chair by shoulder straps with his or her hands and feet restrained with straps as well.

charged with destruction of property, and the inmate continued cursing at Serb. Serb then told the inmate, "You are not very smart, are you?" The inmate responded, "Well, you are not either." Serb replied, "Yeah, but the difference between me and you is I go home everyday." The inmate then said, "You're going home to that f****** b**** wife of yours." Serb then slapped the inmate across the face while he was still in full restraints. According to another officer who witnessed the incident, Serb walked out the door of the room, "put his hands up on the wall for a couple seconds, turned, [and] walked back into the room." He then removed either his duty belt or "belt keeper," threw it down, and stated, "Let this mother f***** out of the chair and see how bad he really is."[3]

¶5      Serb's sergeant ordered him out of the room, and shortly thereafter Serb reported to his superiors the fact that he had struck the inmate. Serb testified that the inmate's comment about his wife had "hit the wrong button at that moment in time" because she had significant health problems and on "[t]hat particular day [he] was worried about her." After an internal affairs investigation, PCSD charged Serb with violations of the Pinal County Employee Uniform Merit Rules and the Pinal County Sheriff's Discipline Policy Manual and General Orders, and terminated his employment.[4]

---

[3]Serb testified he could not recall what had happened after he had initially walked out of the room and then had reentered.

[4]Specifically, PCSD's order of dismissal set forth the following statement of charges and conclusion:

> Charge (1)     Violation of Pinal County Employee Uniform
>                Merit Rule 12.1C (9)  The employee has engaged

4

**¶6** At the conclusion of its hearing, the Commission (by a three to one vote, with the fifth member abstaining) rejected the termination and reinstated Serb to his position. This appeal followed the superior court's affirmance of that decision.

---

in conduct, on or off duty that is of such a nature that it would tend to bring discredit to the County.

Charge (2)   Violation of Pinal County Employee Uniform Merit Rule 12.1(C) (25)  Any other improper conduct or performance of such severity as to constitute cause for disciplinary action.

Charge (3)   Violation of Pinal County Sheriff's Discipline Policy Manual.  Use of excessive force, Use of rude or insulting language or conduct offensive to the public or other employees.

Charge (4)   Violation of Pinal County Sheriff's Department General Orders: General Conduct.  Employees shall maintain a high level of moral conduct which will not impair their ability to perform their duties as an employee of the department or causes [sic] the department to be brought into dis[re]pute.

. . . .

CONCLUSION:  On August 13, 2002 Corporal Serb struck a restrained inmate, was verbally abusive, removed his duty belt and requested the release of the inmate with the intent of engaging in further aggressive behavior.  His actions represent excessive force in violation of the Pinal County Sheriff's Discipline Policy Manual, the Pinal County Sheriff's Department General Orders and Pinal County Merit rules 12.1(C) rules 9, and 25.

5

**DISCUSSION**

**¶7** The county contends that in reviewing PCSD's decision to fire Serb, "[t]he Merit Commission and Superior Court failed to apply the required deferential standard of review."[5] The county also maintains "[t]he Merit Commission had no authority to revoke the discipline." We review de novo the superior court's ruling affirming the Commission's decision and "may substitute our opinion for that of the superior court because we are reviewing the same record." *See M & M Auto Storage Pool, Inc. v. Chemical Waste Mgmt., Inc.*, 164 Ariz. 139, 143, 791 P.2d 665, 669 (App. 1990); *see also Pima County v. Pima County Merit Sys. Comm'n*, 189 Ariz. 566, 569, 944 P.2d 508, 511 (App. 1997) (*Mathis*) (absent trial de novo in superior court, "same standards of review apply on appeal from the superior court to this court").

**¶8** We also review de novo the administrative decision to determine "whether the Merit Commission acted illegally, arbitrarily, or capriciously, or whether it abused its

---

[5]In support of that contention, the county relies largely on *Pima County v. Pima County Law Enforcement Merit System Council*, 209 Ariz. 204, 99 P.3d 19 (App. 2004) (*Harvey*), in which this court concluded that "the Council exceeded its statutory authority [under A.R.S. § 38-1003] when it applied a nondeferential standard in reviewing [the sheriff's] personnel decision." *Id*. ¶ 7. We note, however, that our supreme court granted review in that case and currently has it under advisement. No. CV-04-0356-PR (Ariz. Mar. 22, 2005). We further note that the supreme court also granted review of a case in which Division One of this court affirmed the superior court's judgment upholding a merit system commission's decision to modify discipline (termination) a sheriff's department had imposed against a detention officer. *Maricopa County Sheriff's Office v. Maricopa County Employee Merit Sys. Comm'n*, No. 1 CA-CV 03-0028 (memorandum decision filed January 8, 2004) (*Juarez*), *review granted*, No. CV-04-0046-PR (Ariz. June 29, 2004).

6

discretion." *Id.; see also Maricopa County v. Gottsponer*, 150 Ariz. 367, 370, 723 P.2d 716, 719 (App. 1986). In making that determination, we focus on and independently review the legal question of "[w]hether substantial evidence supports the Merit Commission's findings." *Mathis*, 189 Ariz. at 569, 944 P.2d at 511. And, we recognize the different functions served by merit commissions and courts in this context. Because the Commission acts as a quasi-judicial, fact-finding body, it, not this court, determines the credibility of witnesses, reconciles conflicting evidence, and weighs the sufficiency of the evidence presented to it in the appeal process. *Id*. at 568, 944 P.2d at 510; *see also Pima County v. Pima County Law Enforcement Merit Sys. Council*, 128 Ariz. 62, 63, 623 P.2d 851, 853 (App. 1980) (*Klein*).

¶9 The County Employee Merit System authorizes a county employer, or "appointing authority," to dismiss an employee "by written order, stating specifically the reasons for the action."[6] A.R.S. § 11-356(A). A merit commission may modify or revoke the decision of an appointing authority "only if its action was arbitrary or taken without reasonable cause, or the penalty imposed was 'so disproportionate . . . as to be shocking to a sense of fairness.'"[7] *Pima County v. Pima County Merit Sys. Comm'n*, 186 Ariz. 379,

---

[6]The Pinal County Uniform Merit Rules mirror these requirements for terminating an employee for a disciplinary reason.

[7]Similarly, although the Pinal County Uniform Merit Rules do not mention any "shocking to a sense of fairness" standard, they provide: "If, after the hearing, a majority of the Commission determines that the appealed action was arbitrary or taken without reasonable cause, the action shall be revoked or modified. Otherwise the action shall be affirmed."

381, 923 P.2d 845, 847 (App. 1996) (*Logan*), *quoting Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721.

¶10      An appointing authority's disciplinary action is "arbitrary" if it is "'unreasoning action, without consideration and in disregard of the facts and circumstances.'" *Mathis*, 189 Ariz. at 568, 944 P.2d at 510, *quoting Tucson Pub. Sch. Dist. No. 1 v. Green*, 17 Ariz. App. 91, 94, 495 P.2d 861, 864 (1972). Reasonable cause implies "some substantial shortcoming which renders the continuance of the officer in his position detrimental to the discipline or efficiency of the service." *Civil Serv. Comm'n v. Livingston*, 22 Ariz. App. 183, 187, 525 P.2d 949, 953 (1974). If a commission finds that "the evidence does not support the charge," it must revoke the disciplinary order as arbitrary or lacking reasonable cause. *Mathis*, 189 Ariz. at 568, 944 P.2d at 510.

¶11      Here, although it conducted a full-day evidentiary hearing, the Commission did not expressly find whether the evidence supported or failed to support the charges against Serb. Its written "findings of fact" merely describe the testimony of the various witnesses and state that Serb "allegedly assaulted a restrained inmate by hitting [him] in the face with his open hand. Serb also allegedly was using rude and insulting language as to put the inmate in an aggravated state." But based on uncontroverted evidence adduced at the hearing and the commissioners' recorded, post-hearing discussion about the charges, it is

8

clear that Serb's having committed the acts charged was undisputed.[8] In fact, Serb admitted to having hit the inmate, and the evidence was uncontroverted that Serb subsequently had asked other officers to let the inmate "up out of the chair and . . . see how bad he is."

¶12    Thus, because the Commission implicitly "determine[d] the evidence support[ed] the charge[s]," some form of disciplinary action "not otherwise prohibited" was warranted. *Id.* at 568, 569, 944 P.2d at 510, 511. In its deliberations and decision, the Commission apparently questioned the permissibility of PCSD's termination decision and focused on a portion of PCSD's Discipline Policy Manual (the manual) that addressed excessive force. That section provided progressive discipline for first, second, and third offenses that also "depend[ed] on [the] extent of injury." The Commission concluded that the section of the manual "regarding Excessive Force was vague in that it said that it depends on the extent of the injuries and the minimum discipline action for a [first] Offense ranged from a Performance Improvement Recommendation to 15 days off." To the extent that statement suggests that termination was not permitted, we disagree.

¶13    The very first paragraph of the manual's pertinent section on which the Commission relied states: "Although it is the intent of the Pinal County Sheriff's Department to use progressive discipline whenever possible, it is not required to do so. The

---

[8]During the Commission's post-hearing deliberations, the chairman stated: "I don't think there is any question among those of us that have listened today that there was inappropriate behavior, several different inappropriate behaviors. That has been agreed to, I think, by all parties."

severity of the infraction will determine at which level the disciplinary measures will begin." In addition, that section of the manual states that "[t]he acts and/or infractions listed herein are . . . meant as guidelines" and that "[t]he Sheriff has the discretion to make changes and alterations to these standards as needed." Thus, the manual permitted PCSD to apply a harsher disciplinary measure, including dismissal, for serious infractions.[9]

¶14       Additionally, Serb was charged with violations of the Pinal County Uniform Merit Rules and the PCSD General Orders. *See* n.4, *supra*. Those violations, which the Commission failed to address, also would have permitted PCSD to terminate Serb.

¶15       Because the evidence supported the charges against Serb and because dismissal was "within the range of permissible disciplinary acts," *Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721, the Commission could not revoke PCSD's action entirely and could only modify PCSD's order under limited circumstances.[10] A merit commission may modify the discipline imposed if it determines "the penalty imposed was 'so disproportionate . . . as to be shocking to a sense of fairness.'" *Logan*, 186 Ariz. at 381, 923 P.2d at 847, *quoting*

---

[9]The two witnesses on whose testimony Serb primarily relies, Sergeant Stokes and Lieutenant Lairmore, acknowledged that Serb's conduct was a "serious infraction" and violated other rules. Although the Commission's chairman characterized Serb's conduct as "accidental and a lapse of judgment," the Commission did not find or suggest that Serb's "inappropriate behavior" was minor or insignificant.

[10]The Commission members exhibited some confusion after the hearing on whether they had authority to modify the discipline and apparently concluded they could take no action other than upholding or rejecting PCSD's termination decision. The member who moved to "reject dismissal as proper punishment," however, also remarked that "[p]unishment is called for."

10

*Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721; *see also Mathis*, 189 Ariz. at 568-69, 944 P.2d at 510-11. While noting the difficulty of applying that rather subjective standard, *Logan*, 186 Ariz. at 381, 923 P.2d at 847, this court has outlined several factors to consider:

> "[I]t may be ventured that a result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally visited or threatened by the derelictions of the individuals. Additional factors would be the prospect of deterrence of the individual or of others in like situations, and therefore a reasonable prospect of recurrence of derelictions by the individual or persons similarly employed. There is also the element that the sanctions reflect the standards of society to be applied to the offense involved.
>
> . . . .
>
> Paramount too, in cases of sanctions for agencies like the police, is the principle that it is the agency and not the courts which, before the public, must justify the integrity and efficiency of their operations."

*Id.*, *quoting Pell v. Bd. of Educ. of Union Free Sch. Dist. No. 1*, 313 N.E.2d 321, 327-28 (N.Y. 1974). Finally, as we noted in *Logan*, *id*., the *Gottsponer* court also focused on whether the employee had been "treated differently from other, similarly situated employees." 150 Ariz. at 373, 723 P.2d at 722.

¶16 In this case, termination undoubtedly affected Serb negatively, particularly financially. But, we cannot say that impact is "disproportionate to the sustained charge." *Logan*, 186 Ariz. at 381, 923 P.2d at 847. As the Commission noted, Serb's actions in

11

striking a fully restrained inmate and then profanely suggesting that other officers allow him to fight the inmate were completely inappropriate for any detention officer, particularly one in a supervisory position as was Serb. In addition, the Commission did not find, nor can we say, that the impact on Serb is disproportionate to the harm or risk of harm to PCSD. Rather, the record supports the county's assertion that "[t]here was a legitimate concern that Serb's conduct would bring discredit to the department."

¶17 Likewise, although we cannot speculate on the likelihood that Serb would commit a similar act in the future, the county's position that "[i]t is crucial that the PCSD be able to deter such behavior," is not unreasonable. PCSD could reasonably conclude that deterring other officers from assaulting fully restrained inmates in response to mere verbal provocation is critical, and we cannot find it "shocking" for PCSD to terminate an offending officer as a means of accomplishing that goal. Nor does PCSD's choice of sanction for Serb's behavior clearly fall outside the "standards of society." *Logan*, 186 Ariz. at 381, 923 P.2d at 847. In fact, Serb entered a diversion program to avoid being charged with aggravated assault as a result of the incident. We cannot say, therefore, that discharging Serb was an excessive or arbitrary response to what society clearly views as a serious offense.

¶18 Finally, we must consider PCSD's treatment of similarly situated employees. The Commission heard testimony that another officer had struck an inmate in handcuffs in 1997. The witness testified that he "believe[d]" that the officer in that prior incident had merely been demoted. But, the record does not suggest that the inmate in that incident had

12

been fully restrained or that the other officer had continued to curse at and threaten the inmate after having hit him. No evidence was presented that the other officer had reported to the same supervisor(s) as did Serb or that the same standards of behavior or discipline had been in effect at the time. Thus, the record does not establish, and the Commission did not find, that Serb was "similarly situated" to that officer; nor does Serb so argue. *Gottsponer*, 150 Ariz. at 372-73, 723 P.2d at 721-22; *cf. Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (in federal employment discrimination case, "similarly situated" means individuals with whom the plaintiff compares "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

¶19        In the end, as we pointed out in *Logan*, PCSD "alone 'must justify to the public the integrity and efficiency of its operations.'" 186 Ariz. at 382, 923 P.2d at 848, *quoting  Bishop v. Law Enforcement Merit Sys. Council*, 119 Ariz. 417, 421, 581 P.2d 262, 266 (App. 1978). The Commission stated that PCSD "had not sustained its burden to prove the punishment was reasonable," but PCSD bore no burden of proving the reasonableness of its actions. Rather, the Commission's revocation of PCSD's order of dismissal and reinstatement of Serb hinged on his having proven PCSD's disciplinary action was arbitrary or taken without reasonable cause, findings neither made by the Commission nor supported by the record. And, even had the Commission decided to modify the

13

termination, it would have been required to first determine that PCSD's action was "shocking to a sense of fairness." *Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721.

¶20 Although a majority of the Commission members found it "shocking to their sense of fairness that Serb be discharged using the Sheriff's Discipline Policy Manual as a basis," the Commission cited no evidence to support that finding, and we find none. Similarly, the Commission expressed its "belie[f] that the Sheriff's gauge for punishment was arbitrary and capricious," but again, cited no evidence to support any finding that PCSD's termination decision constituted "'unreasoning action, without consideration and in disregard of the facts and circumstances.'" *Mathis*, 189 Ariz. at 568, 944 P.2d at 510, *quoting Green*, 17 Ariz. App. at 94, 495 P.2d at 864; *see also Ariz. Dep't of Corrections v. State Personnel Bd.*, 202 Ariz. 598, ¶ 10, 48 P.3d 1208, 1210 (App. 2002) ("A disciplinary action is not arbitrary if it falls within the range of permissible discipline.").

¶21 In the absence of any actual findings of fact by the Commission, and finding no reasoned basis or substantial factual support for its ultimate conclusions, we conclude the Commission erred in revoking Serb's termination.[11] *See Logan*, 186 Ariz. at 382, 923

---

[11]In support of the Commission's decision, Serb variously asserts he was a "valued and respected employee who consistently performed his job"; the inmate "was not physically hurt by the single slap" and filed no grievance or legal action against Serb; and Serb had merely displayed a "lapse in judgment." Even had the Commission cited or relied on such "mitigating facts," however, they do not establish arbitrariness in, or lack of reasonable cause for, PCSD's order of dismissal; nor do they render that sanction "so disproportionate under the circumstances to shock one's sense of fairness." *Logan*, 186 Ariz. at 382, 923 P.2d at 848 (Commission's decision to reinstate discharged detention officers not justified despite evidence that officers had been provoked by inmate, lacked

14

P.2d at 848 (Commission erred in reinstating three discharged employees when record contradicted "Commission's finding that the Department's sanction against [employees] was arbitrarily imposed" and did not support a finding that dismissal "was shockingly disproportionate to the offense"); *Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721 ("Although the Commission's order states the sanction against Gottsponer was arbitrarily imposed, we find no evidence to support such a finding."). "[I]t was not the Commission's prerogative, nor is it the courts', to merely substitute its opinion for that of the Department." *Logan*, 186 Ariz. at 382, 923 P.2d at 848.

## DISPOSITION

¶22 The superior court's judgment affirming the Commission's decision is reversed, and the case is remanded for entry of an order reversing the Commission's decision and reinstating the disciplinary action imposed by PCSD.[12] As a necessary corollary to this result, the attorney fee and back pay awards in favor of Serb also are reversed. *See Bentivegna v. Powers Steel & Wire Prods., Inc.*, 206 Ariz. 581, ¶ 26, 81 P.3d 1040, 1047

---

supervision, and had "high performance ratings"); *Gottsponer*, 150 Ariz. at 372, 723 P.2d at 721 (Commission's findings that "Gottsponer was an excellent nurse, had no previous record of disciplinary actions, . . . was guilty of nothing more than bad judgment, [and] her supervisors [had] overreacted in demoting her" did not justify Commission's modification of disciplinary action).

[12]At oral argument in this court, Serb urged for the first time that we should remand the case to the Commission so it could "start over," apply "correct standards," and "get it right." But, because he did not argue that in his brief and cites no authority to support those new requests now, we decline that belated proposal. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) (issues and arguments raised for first time at oral argument on appeal are untimely and generally deemed waived).

(App. 2004) (award of attorney fees under A.R.S. § 12-341.01 reversed following reversal on appeal because recipient party was no longer "prevailing party").

_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
M. JAN FLÓREZ, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge