IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BENNETT LEWIS, *Plaintiff/Appellant*,

*v.*

ARIZONA STATE PERSONNEL BOARD; MARK ZISKA; JOSEPH
SMITH; MARK STANTON; JOSEPH BEERS; ARIZONA DEPARTMENT
OF CORRECTIONS; CHARLES RYAN, *Defendants/Appellees*.

No. 1 CA-CV 15-0248
FILED 7-7-2016

Appeal from the Superior Court in Maricopa County
No.  LC2014-000282-001
The Honorable Crane McClennen, Judge

**AFFIRMED**

COUNSEL

Yen Pilch & Landeen, P.C., Phoenix
By Neil Landeen, Michael Pang
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Robert J. Sokol
*Counsel for Defendants/Appellees Arizona Department of Corrections*

Jackson Lewis, P.C., Phoenix
By Jeffrey A. Bernick
*Counsel for Defendants/Appellees Arizona State Personnel Board*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

---

**H O W E**, Judge:

**¶1**        Bennett Lewis appeals the order of the Arizona Department of Corrections ("the Department") dismissing him from his position and rejecting the recommendation of the Arizona State Personnel Board ("the Board") to adopt the hearing officer's recommendation to overturn the dismissal. Lewis argues that the Department's order is contrary to law, not supported by substantial evidence, arbitrary and capricious, and based on a violation of federal and state constitutional provisions. But because the Department's order was legally sufficient and supported by substantial evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        The Department employed Lewis as a community corrections and parole officer. His duties included supervising released offenders in the community. According to the Department Order Manual and Employee Handbook, Lewis was expected to conduct himself in a respectful, professional, and ethical manner at all times and to refrain from behavior that would discredit or embarrass the Department or the State of Arizona.

**¶3**        An offender who is released is required to report to the parole office by 3:00 p.m. that day. If the offender does not arrive by that time, the Department's office supervisor has the discretion to issue an arrest warrant. On October 17, 2013, the Department's transport unit released an offender—who suffered from mental health problems and needed close supervision—at a mall at 2:30 p.m. Because the offender did not have a ride to the parole office, his visually impaired mother and mentally impaired sister took a bus to meet him at the mall. The offender called the parole office and spoke to Lewis, but he and his family did not arrive at the office until 4:30 p.m.

**¶4**        When the offender and his family arrived at the parole office, they were escorted into Lewis' supervisor's office. Lewis came in and told the offender that he was supposed to have arrived by 3:00 p.m. and because

he did not, the Department would issue a warrant for his arrest. The offender explained to the supervisor that the transport unit dropped him off late and that he arrived at the office as soon as he could. The supervisor found the offender's explanation reasonable.

¶5        Lewis, however, repeatedly threatened to send the offender back to prison, agitating the offender. The offender's mother and sister became concerned, repeatedly saying, "Oh, no, no, no. Please don't send him back." The supervisor reassured the offender's family that he was the supervisor and that he was not going to send the offender back to prison. As a result of Lewis' threats, the supervisor had to direct the offender's attention away from Lewis and towards him on several occasions, reassuring the offender that he would not be sent back to prison.

¶6        The supervisor asked the offender where he wanted to live during his parole. The offender said he wanted to live with his mother, and his mother told the supervisor that she was willing to have him live with her. Although the Department had previously rejected the offender's request to live with his mother, the offender's mother had moved after that decision and her new housing allowed her son to live with her. Using his discretion, the supervisor agreed to let the offender live with his mother because he concluded it "was a better opportunity for that offender."

¶7        Lewis told the supervisor that he disagreed and that the offender should be sent to a half-way house. The supervisor nonetheless instructed Lewis to prepare the offender to stay with his mother for the evening and to tell him to report to the parole office in the morning, and Lewis refused to comply. The supervisor instructed Lewis three times to do as he was told; Lewis refused each time. Moreover, Lewis told the offender that he would go where the Department told him to go and that he should "ignore what the supervisor [was] saying." When the supervisor told Lewis to leave, Lewis said, "You're making bad decisions" and "You don't know what you're doing." The supervisor again told Lewis to leave, but he refused. After several more orders to leave, Lewis left. After the supervisor finished the intake process, he walked by Lewis' cubicle and Lewis said, without prompting, "I suppose you're going to write me up. If you do, make it good."

¶8        On November 18, 2013, Lewis received an 80-hour suspension for a separate incident of discourteous treatment of the public. He filed a grievance challenging the suspension on December 23. That same day, the community corrections manager issued Lewis a notice of charges for the October 17 incident. The manager stated in the notice that Lewis' actions

constituted incompetence by failing to perform required duties; neglect of duty by disregarding orders or directives of a supervisor; and discourteous treatment of the public by conducting himself in an offensive and discourteous manner.

**¶9** The manager identified the Department Order Manual sections Lewis allegedly violated, resulting in two charges. Charge 1 was that Lewis "engag[ed] in [a] confrontational dialogue with the offender," threatened the offender and increased his level of agitation, and disregarded the offender's mother and sister's explanation for the offender's late arrival. Charge 2 was that Lewis refused to take direction from his supervisor and became argumentative with the supervisor in the presence of the offender and his family. Charge 2 also stated that, although Lewis' supervisor redirected him three times, Lewis failed to comply and instead demonstrated insubordination and unprofessional behavior toward his supervisor.

**¶10** The manager advised Lewis that she was considering a range of disciplinary actions, including dismissal. She also stated that in issuing the notice, she considered the November 18 suspension, four other prior suspensions, and a letter of reprimand. Lewis responded in writing that he was "very remorseful and sorry that [his supervisor] mistook [his] actions as rude and unprofessional" and that his "intent [was] to assist him in the staffing of an offender."

**¶11** In January 2014, the manager dismissed Lewis on the grounds of incompetence, neglect of duty, and discourteous treatment of the public as a result of the October 17 incident. The notice of discharge stated that Lewis' dismissal was based on the two charges and consideration of the other disciplinary actions and the November 18 suspension. The Department dismissed Lewis' grievance for the November 18 suspension after he was terminated. Lewis appealed his termination to the Board.

**¶12** After an appeals hearing, the hearing officer concluded that the Department proved the allegations in charge 2, but not charge 1. The hearing officer also concluded that Lewis was not afforded all his due process rights because his dismissal was based in part on the November 18 suspension, but his grievance of that suspension had been disallowed by his subsequent dismissal. The hearing officer further concluded that because Lewis' due process rights were violated and because the Department only proved one of two charges, no "just cause" existed, as statutorily required, for dismissing Lewis, and the Department's action was arbitrary, capricious, or without reasonable cause and an abuse of

discretion. The hearing officer therefore recommended that Lewis' appeal be upheld and that the dismissal be overturned. After reviewing the hearing officer's recommendation, the Board adopted a resolution that "just cause" did not exist to impose disciplinary action and recommended that Lewis be reinstated to his former position.

¶13         The Department's Director subsequently rejected the Board's recommendation as arbitrary and capricious and without reasonable justification. In explaining his decision, the Director stated that the Board's recommendation was "contrary to the evidence presented at the [appeals] hearing and contrary to the Findings of Fact adopted by the Board" and that the Board's factual findings and conclusions were "not supported by the evidence presented at the hearing." The Director also explained that the Board's order violated A.R.S. § 38–1103[1], which, among other things, defines the "just cause" required to subject a law enforcement officer to disciplinary action, and A.R.S. § 41–783(C), which requires the Board in an appeal from a disciplinary action to determine whether the Department has met its burden of proof to impose discipline. Lewis appealed the Department's decision to the superior court, and the court affirmed. Lewis timely appealed the superior court's order.

## DISCUSSION

¶14         Lewis argues that the Department's order is contrary to law, not supported by substantial evidence, arbitrary and capricious, and based on a violation of the federal and state constitutions. When reviewing an administrative decision, the superior court may reverse the decision if the court finds it is not supported by substantial evidence or is contrary to law, arbitrary or capricious, or an abuse of discretion. A.R.S. § 12–910(E). "The court does not conduct a trial de novo, act as the trier of fact, nor substitute its view of the evidence for that of the agency." *Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 378 ¶ 13, 972 P.2d 1010, 1014 (App. 1998).

¶15         We review the superior court's ruling "to determine whether the record contains evidence to support the judgment, and in doing so, we reach the underlying issue of whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Arizona Dep't of Corr. v. State Pers. Bd.*, 202 Ariz. 598, 600 ¶ 8, 48 P.3d 1208, 1210 (App. 2002)

---

[1]      The Legislature has amended the relevant statutes since Lewis initiated his appeal, but because no material changes were made, we cite the current version of the statutes.

(citation omitted). "Neither this court nor the superior court may substitute its judgment for that of the agency on factual questions or matters of agency expertise, but we apply our independent judgment . . . to questions of law, including questions of statutory interpretation and constitutional claims." *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430 ¶ 13, 153 P.3d 1055, 1059 (App. 2007). Additionally, we view the evidence in the light most favorable to upholding the Department's decision and will affirm if any reasonable interpretation of the record supports the decision. *See Baca v. Ariz. Dep't of Econ. Sec.*, 191 Ariz. 43, 46, 951 P.2d 1235, 1238 (App. 1997). Because the Department's order was legally sufficient and supported by substantial evidence, we affirm the superior court's order affirming the Department's order dismissing Lewis.

### 1. Contrary to Law

**¶16** Lewis first argues that the Department's order is contrary to law because it did not list reasons for rejecting the Board's recommendation as A.R.S. § 38–1106 requires.[2] A law enforcement officer may be subject to disciplinary action only when "just cause" exists. A.R.S. § 38–1103(A). As relevant, a law enforcement officer is "[a] detention officer or corrections officer, other than a probationary employee or juvenile detention officer, who is employed by this state." A.R.S. § 38–1101(8)(a). To establish "just cause," the employer must have informed the officer of the possible disciplinary action resulting from the officer's conduct through an agency manual, employee handbook, or employer's rules and regulations. A.R.S. § 38–1101(7)(a). "Just cause" also requires that the disciplinary action must

---

[2] The Department contends that Title 38, Chapter 8, Article 1, governing law enforcement officers, does not apply because Title 41, Chapter 4, governing employment of state personnel generally, is more recent and specific and therefore trumps the application of Title 38. But we have already decided this issue. In *Berndt*, an opinion issued after the Department filed its answering brief, we held that, although A.R.S. §§ 38–1106 and 41–783 establish different procedures, no conflict prohibits the reasonable application of both statutes or would otherwise require one to be applied to the exclusion of the other. *Berndt v. Ariz. Dep't of Corr.*, 238 Ariz. 524, 528 ¶ 12, 363 P.3d 141, 145 (App. 2015) (addressing the version of A.R.S. § 38–1106 before it was amended). We concluded that a law enforcement officer within the meaning of A.R.S. § 38–1101 "is afforded additional statutory protections—namely, restriction upon the circumstances under which the employing agency may reject the Board's decision—which are not contained in Title 41." *Id.*

be reasonably related to the standard of conduct for the agency's officers; be supported by a preponderance of the evidence; and not be excessive, but reasonably related to the seriousness of the offense and the officer's service record. A.R.S. § 38–1101(7)(c)–(d). In an appeal of such a disciplinary action, the Department may reject the Board's order if it is arbitrary or without reasonable justification and the Department states a reason for doing so:

> [A]n employer . . . may amend, modify, reject or reverse the portion of a decision made by a hearing officer, administrative law judge or appeals board that was arbitrary or without reasonable justification. The employer . . . shall state the reason for the amendment, modification, rejection or reversal.

A.R.S. § 38–1106(H).

¶17 Here, the Department's order satisfied the statutory requirements. The order stated that the Department was rejecting the Board's recommendation as arbitrary and capricious and without substantial justification. The Department explained that the Board's recommendation was contrary to the evidence and that its factual findings and conclusions were not supported by substantial evidence. The Department also asserted that the Board's order violated A.R.S. § 38–1103, presumably subpart (A) because "just cause" existed to dismiss Lewis, a law enforcement officer.

¶18 Lewis counters that the Department's order was insufficient because it "fail[ed] to provide any evidence or explanation why the Board's Order is arbitrary or without reasonable justification." Lewis argues that the statute requires the Department to provide detailed factual findings and conclusions to support its decision just as the statute requires the hearing officer and the appeals board to do. The plain language of the statute, however, does not impose this obligation. In subpart (H), the statute merely directs the "employer . . . [to] state the reason for the amendment, modification, rejection or reversal." A.R.S. § 38–1106(H). In contrast, subparts (K) and (L) specifically direct the "hearing officer, administrative law judge or appeals board" to "state in every finding of disciplinary action whether or not just cause existed for the disciplinary action" and "document in the record those circumstances where [it] determines that a party has clearly violated a party's obligation under this section." A.R.S. § 38–1106(K), (L). The distinction between the specificity of the documentation required on the part of the hearing officer, administrative law judge, or appeals board in subpart (L) and the general obligation

imposed on the employer in subpart (H) makes clear that the Legislature did not intend to impose on the employer the burden Lewis argues exists.

¶19        Lewis further argues that A.R.S. § 38–1106(H) "expressly limits the [Department] to a strictly objective role, which requires deference to the Board in all cases in which the Board does not act arbitrarily or without reasonable justification." This argument fails because the Department is not obligated to apply the same deferential standard of review as this Court or the superior court when reviewing the recommendations of the appeals board or the hearing officer.

¶20        In contested disciplinary proceedings, the agency makes the final decision and may adopt, reject, or modify a hearing officer's or appeals board's recommended decision. *See* A.R.S. § 38–1106(H) ("[A]n employer or a person acting on behalf of an employer may amend, modify, reject or reverse the portion of a decision made by a hearing officer, administrative law judge or appeals board that was arbitrary or without reasonable justification."). As the ultimate decision maker, the Department was not bound by the hearing officer's or the appeals board's factual findings or legal conclusions and may rightfully accept, reject, or modify the recommendations. *See Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 191–92 ¶¶ 12, 18, 140 P.3d 970, 974–75 (App. 2006) ("[A]n agency has the authority to make independent findings of fact. . . . An agency may only depart from [the hearing officer's or the appeals board's] findings if substantial evidence supports such a departure."); *see also Pima County v. Pima Cty. Merit Sys. Comm'n*, 189 Ariz. 566, 568–69, 944 P.2d 508, 510–11 (App. 1997) (discussing the County Employee Merit System and providing that the Merit Commission, the final administrative decision maker, may affirm or revoke the appointing authority's order if the Commission determines that the appointing authority's action was arbitrary or taken without reasonable cause).

¶21        Lewis relies on *Carlson* to support his argument. This Court stated there that "[n]either this court nor the superior court may substitute its judgment for that of the agency on factual questions or matters of agency experience," *Carlson*, 214 Ariz. at 430 ¶ 13, 153 P.3d at 1059, and thus, Lewis argues, that standard of review also applies to the Department. But the cited language in *Carlson* refers to the standard of review this Court and the superior court apply when reviewing an agency action. *See id.* The Department is not a court; it is an administrative agency to which we defer for factual questions and matters of agency expertise. *See id.* ("Neither *this court nor the superior court* may substitute its judgment for that of the *agency on factual questions or matters of agency expertise*, but we apply our

independent judgment . . . to questions of law, including questions of statutory interpretation and constitutional claims.") (emphasis added).

¶22 Moreover, A.R.S. § 12–910 provides the scope of review when courts review a final administrative decision and clearly distinguishes between a court and an agency. Subpart (E) states that "[t]he court shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12–910(E). An "agency" is "every agency, board, commission, department or officer authorized by law to exercise rule-making powers or to adjudicate contested cases, whether created by constitutional provision or legislative enactment." A.R.S. § 12–901(1).

¶23 Here, the Department's Director by statute adjudicates contested cases arising from appeals of disciplinary actions imposed on Department employees. The Director's order terminated Lewis from his position as a community corrections officer and therefore affected Lewis' legal rights as a state employee. *See* A.R.S. § 12–901(2). The order also completed Lewis' grievance proceedings before the agency. *See* A.R.S. § 38–1107(A). Consequently, the Department is an agency and is not obligated to apply the same deferential standard of review as this Court or the superior court when reviewing the recommendations of the appeals board or the hearing officer.

## 2. Insufficient Evidence

¶24 Lewis next argues that his due process rights were violated because in dismissing him, the Department relied on the November 18 suspension, a suspension that Lewis was unable to grieve due to his dismissal. An agency director has the statutory responsibility for the direction and control of personnel administration in the agency. A.R.S. § 41–743(A). In this capacity, the director must adopt rules governing "[g]rievance rights specific to covered employees." A.R.S. § 41–743(B)(3)(h). Pursuant to this authority, the Department's Director promulgated A.A.C. R2-5B-401-03, which is "applicable only to covered employees." A.A.C. R2-5B-401. A "covered employee" includes a community corrections officer who "is appointed to a position in the covered service," which is an employment status conferring rights of appeal under A.R.S. § 41–783. A.R.S. § 41–741(5)(d). In *Carlson*, this Court acknowledged that employees may have certain due process rights post-termination and distinguished between due process rights afforded pre-termination and rights afforded

post-termination, which are provided for covered employees in A.R.S. § 41–783. *See Carlson*, 214 Ariz. at 430–31 ¶¶ 15–17, 153 P.3d at 1059–60. Consequently, we disagree with the Department's argument that Lewis' right to grieve his November 18 suspension evaporated when he was terminated. However, because the "just cause" established to justify Lewis' dismissal in this case was based on several prior disciplinary actions, any violation of Lewis' due process rights arising from the November 18 suspension did not invalidate his termination.

¶25        Lewis also argues that insufficient evidence supports the Department's order. But the record demonstrates that the Department had sufficient grounds to dismiss Lewis even without considering the November 18 suspension. In charge 1, the Department alleged that Lewis was "engaging in confrontational dialogue with the offender," which resulted in a "heightened level of agitation through [his] repeated verbal threats to arrest." The Department also alleged that the offender's mother and sister attempted to explain the reason for the offender's late arrival, but Lewis disregarded their explanation.

¶26        The Department met its burden of proving charge 1. The record shows that Lewis threatened at least three times to send the offender back to prison because he was late to the parole office. Lewis' actions caused the offender to become agitated and required Lewis' supervisor to redirect the offender's attention repeatedly toward the supervisor and away from Lewis. Lewis' threats also caused the offender's mother and sister to become concerned, begging the Department to "Please don't send him back." The record also shows that Lewis further agitated the offender by denying his request to live with his mother and telling him that he would go wherever the Department told him to—even though the offender's mother agreed to the living arrangement and Lewis' supervisor approved it. The record further shows that, despite the offender's mother and sister's repeated explanation that they had to take a bus to the mall to meet the offender and then a bus to the parole office, Lewis did not accept the explanation. Instead, Lewis told the offender that the Department would issue a warrant for his arrest and send him back to prison. Consequently, sufficient evidence supports the Department's conclusion that it met its burden of proof that Lewis engaged in a confrontational dialogue with the offender as alleged in charge 1.

¶27        In charge 2, the Department alleged that Lewis refused his supervisor's directive and became argumentative with his supervisor in the presence of the offender and his family and after completing the intake process. The Department met its burden of proving charge 2. The record

shows that Lewis repeatedly disregarded his supervisor's commands to stand down and to leave. Lewis' supervisor told the offender that the Department would not send him back to prison, but Lewis disregarded his supervisor's decision and went so far as to tell the offender to ignore his supervisor. The record also shows that after Lewis' supervisor decided to let the offender live with his mother, Lewis demonstrated insubordinate and unprofessional behavior by telling his supervisor that he did not know what he was doing and that he was making a bad decision—in front of the offender and his family. The record further shows that, after the supervisor completed the offender's intake process and was passing Lewis' work area, Lewis told his supervisor that if he was going to write a report on Lewis, he better "make it good." Consequently, sufficient evidence supports the Department's conclusion that it met its burden of proof that Lewis refused his supervisor's directive and became argumentative as alleged in charge 2.

¶28　　　　Moreover, Lewis' dismissal was appropriate under the chart of disciplinary sanctions the Department adopted in its Department Order Manual. *See Ariz. Dep't of Corr.*, 202 Ariz. at 600 ¶ 10, 48 P.3d at 1210 ("A disciplinary action is not arbitrary if it falls within the range of permissible discipline."). Lewis' conduct under charges 1 and 2 constituted incompetence by failing to perform required duties, a class 3 offense; neglect of duty by disregarding orders and/or directives of a supervisor, a class 4 offense; and discourteous treatment of the public by conducting oneself in an offensive discourteous manner, a class 2 offense. The manual provides that for a class 4 offense, the range for a second offense is a 40-hour suspension to dismissal and for the third offense is dismissal. The policy also provides that "[m]ultiple violations in any class may result in the imposition of penalties in the next higher class." Without including the 80-hour suspension, Lewis' conduct on October 17 that resulted in dismissal was the fifth time that he had been disciplined for discourteous treatment of the public by conducting himself in an offensive and/or discourteous manner and the second time he was disciplined for neglect of duty by disregarding a supervisor's orders or directives. Consequently, dismissal was within the range of discipline the Department could impose on Lewis because of his prior record. Accordingly, although we agree with Lewis that his due process rights to grieve the November 18 suspension were violated, Lewis was not deprived of due process in the instant case. Sufficient evidence supports the Department's conclusion that "just cause" exists to dismiss Lewis.

### 3. The Board's Role in Appeals

**¶29** The Board filed a separate answering brief and argues that the Board is not a necessary party to an employee's appeal to the superior court from the final decision of the employing agency on a disciplinary matter. The Board also asks this Court to determine whether it is within the Board's authority to hear appeals from law enforcement officers subject to the requirements of Title 38. Although the Board did not file a cross-appeal, *see Maricopa County v. Ariz. Corp. Comm'n*, 79 Ariz. 307, 310, 289 P.2d 183, 186 (1955) ("In the absence of a cross-appeal the appellee can defend only as to the items allowed below and cannot present rejected claims."), we may nonetheless use our discretion in determining whether to address the issues, *see Azore, LLC v. Bassett*, 236 Ariz. 424, 426–27 ¶¶ 6–7, 341 P.3d 466, 468–69 (App. 2014). Because these issues are readily resolved by statute and case law, we exercise our discretion to address them.

**¶30** First, the Board may appear in the appeal proceedings, but it is not a necessary party. A.R.S. § 12–908(A) currently states that "[i]n an action to review a final decision of an administrative agency, the agency and all persons, . . . who are parties of record in the proceedings *may* appear in the proceedings before the superior court as appellees" (emphasis added). In 2013, the Legislature amended A.R.S. § 12–908: instead of the agency and all parties of record "*shall* be made defendants," the amendment provided that the agency and all parties of record "*may* appear in the proceedings before the superior court as appellees." 2012 Ariz. Legis. Serv. Ch. 322 (S.B. 1193) (emphasis added). The amendment therefore removed the mandatory requirement that the agency and all parties of record be defendants in the appeal. *See State v. Garza Rodriguez*, 164 Ariz. 107, 111, 791 P.2d 633, 637 (1990) (noting presumption that "by amending a statute, the legislature intends to change the existing law"). Accordingly, the Board may appear in a judicial appeal from an employing agency's final decision on disciplinary matters, but it is not a necessary party. *See Walter v. Wilkinson*, 198 Ariz. 431, 432 ¶ 7, 10 P.3d 1218, 1219 (App. 2000) ("And, in fact, use of the word 'may' generally indicates permissive intent, while 'shall' generally indicates a mandatory provision.") (citations omitted).

**¶31** Second, pursuant to the Board's authority under Title 41, the Board may hear disciplinary appeals from law enforcement officers. *See* A.R.S. §§ 41–782(A) ("[The Board] shall hear and review appeals as provided in this article relating to dismissal of a covered employee from covered service[.]"); –741(5)(b) (defining "covered employees" to include certain "peace officer[s]" and "correctional officer[s]"). At the same time, Title 38 grants certain rights to "law enforcement officers," defined there as

a "detention or corrections officer, other than a probationary employee or juvenile detention officer, who is employed by this state or a political subdivision of this state." A.R.S. § 38–1101(8)(b). Accordingly, an officer such as Lewis is both a "covered employee" pursuant to Title 41 and a "law enforcement officer" pursuant to Title 38. When such an officer appeals a discipline action to the Board under A.R.S. § 38–1106 pursuant to Title 41, the appeal therefore is subject to the provisions of Title 38. *See* A.R.S. § 38–1101(1) (defining "[a]ppeal" to which Title 38 rights apply as "a hearing before a state or local merit board, a civil service board, an administrative law judge or a hearing officer"). This conclusion has been previously recognized in *Berndt*, which held that a state corrections officer was entitled to protections by both A.R.S. §§ 41–783 and 38–1106 in an action challenging the Department's disciplinary determination. *See Berndt*, 238 Ariz. at 528 ¶ 12, 363 P.3d at 145; *see also supra* n.2.

### 4. Attorneys' Fees on Appeal

¶32        Lewis requests attorneys' fees and costs pursuant to A.R.S. § 12–348(A)(2). Because Lewis did not prevail, we deny the request.

### CONCLUSION

¶33        For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: AA