SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MARICOPA COUNTY SHERIFF'S OFFICE, ) | Arizona Supreme Court |
| ) | No. CV-04-0046-PR |
| ) | |
| Plaintiff-Appellant, ) | Court of Appeals |
| ) | Division One |
| v. ) | No. 1 CA-CV 03-0028 |
| ) | |
| MARICOPA COUNTY EMPLOYEE MERIT ) | Maricopa County |
| SYSTEM COMMISSION, and DANIEL ) | Superior Court |
| JUAREZ, ) | No. CV 2002-001305 |
| ) | |
| Defendants-Appellees. ) | |
| ) | **O P I N I O N** |
| _____ ) | |

Appeal from the Superior Court of Maricopa County
No. CV 2002-001305
The Honorable Gary Donahoe, Judge

**REVERSED; REMANDED WITH INSTRUCTIONS**

_____

Memorandum Decision of the Court of Appeals, Division One
No. 1 CA-CV 03-0028

**VACATED**

_____

RICHARD M. ROMLEY, FORMER MARICOPA COUNTY ATTORNEY          Phoenix
ANDREW THOMAS, MARICOPA COUNTY ATTORNEY
     By    Mary C. Cronin, Deputy County Attorney
Attorneys for Maricopa County Sheriff's Office

KUTAK ROCK, L.L.P.                                        Scottsdale
     By    Michael W. Sillyman
           David M. Park
Attorneys for Maricopa County
Employee Merit System Commission

BIHN & McDANIEL, P.L.C.                                     Phoenix
     By    Martin A. Bihn
           Donna M. McDaniel
And

**J O N E S,** Justice

¶1      Daniel Juarez, a Maricopa County merit system employee, worked as a detention officer at the Madison Street Jail.  He also worked in an extra-duty capacity as an employee of the Maricopa County Sheriff's Office (the "MCSO"), assigned to work at the Gran Mercado Swap Meet in Phoenix.  During the evening of February 11, 2001, two individuals were arrested at the swap meet on suspicion of criminal activity and brought to the sheriff's field office.  Juarez, assisted by a deputy sheriff, took the two detainees to the sheriff's transport van.

¶2      Each detainee was handcuffed in front, with a separate pair of handcuffs connecting the two.  The first entered the van, but the second resisted and began yelling and swearing at Juarez.  Juarez grabbed the detainee by his shirt and pushed him into the van, prompting the detainee to kick Juarez in the upper thigh and groin area.  The detainee continued to yell and swear at him.  Juarez then lost composure and struck the detainee four to five times with a closed fist. He aimed for the face.

¶3      As Juarez threw the punches, the deputy grabbed Juarez' arm, attempting to restrain him both verbally and

2

physically. Juarez pulled his arm away and struck at the detainee at least two more times.

¶4 Based on this incident, the MCSO terminated Juarez' employment. Although Juarez had been disciplined in 1995 for using excessive force on an inmate, MCSO did not rely on the earlier incident in imposing discipline. The discipline, based on undisputed facts, was consistent with MCSO policy and practice that an employee who strikes a physically restrained detainee is subject to discipline up to and including discharge.

¶5 Juarez appealed the termination decision to the Maricopa County Employee Merit System Commission (the "Commission") which, after an adversary proceeding before a hearing officer who made recommendations, concluded that some measure of discipline was appropriate, but that termination from employment was disproportionate to the offense of striking a handcuffed detainee. The Commission also disagreed with the MCSO's determination that Juarez' past employment record was unimportant.

¶6 The Commission reversed Juarez' termination, reinstated him to his position, and reduced discipline to a fifteen-day suspension. The MCSO appealed to the superior court, which, in its appellate capacity, affirmed the

3

Commission's decision. The MCSO then appealed to the court of appeals which, in a 2-1 memorandum decision, affirmed the judgment of the superior court, citing deference to the Commission's decision as the standard of review. The MCSO then petitioned for review in this Court. We have jurisdiction pursuant to Article 6, Section 5(3), of the Arizona Constitution, Rule 23 of the Arizona Rules of Civil Appellate Procedure, and Arizona Revised Statutes ("A.R.S.") section 12-120.24.

## I.

¶7    We granted review to clarify the role of the Maricopa County Employee Merit System Commission when a merit system employee challenges a disciplinary action taken by the employee's appointing authority. In today's opinion, we define the standard of review by which the Commission, a quasi-judicial, fact-finding body, must process appeals in cases that involve employee discipline.

¶8    The employer, referred to in the statute as the "appointing authority," is authorized to take disciplinary action against merit system employees by written order stating the reasons for the action. A.R.S. § 11-356(A);[1] *see Pima*

---

[1]    A.R.S. § 11-356(A) (2001) states,

4

*County v. Pima County Merit Sys. Comm'n*, 186 Ariz. 379, 381, 923 P.2d 845, 847 (App. 1996) ("*Logan*"). An employee dissatisfied with the decision of the appointing authority may appeal to the Commission, A.R.S. § 11-356(B),[2] whose authority under the statute is broadly stated as the power to "affirm, modify or revoke the order." A.R.S. § 11-356(C).[3]

¶9      Following a hearing in which evidence is presented *de novo*, the duty of the Commission is to apply the correct

---

Any officer or employee in the classified civil service may be dismissed, suspended or reduced in rank or compensation by the appointing authority after appointment or promotion is complete only by written order, stating specifically the reasons for the action. The order shall be filed with the clerk of the board of supervisors and a copy thereof shall be furnished to the person to be dismissed, suspended or reduced.

[2]     A.R.S. § 11-356(B) (2001) states,

The officer or employee may within ten days after presentation to him of the order, appeal from the order through the clerk of the commission. Upon the filing of the appeal, the clerk shall forthwith transmit the order and appeal to the commission for hearing.

[3]     A.R.S. § 11-356(C) (2001) states,

Within twenty days from the filing of the appeal, the commission shall commence the hearing and either affirm, modify or revoke the order. The appellant may appear personally, produce evidence, have counsel and, if requested by the appellant, a public hearing.

standard under which the case must be reviewed. While § 11-356(C) grants the Commission broad authority ("affirm, modify or revoke"), the statute is silent as to the standard of review to be applied in appeals to the Commission.

¶10 Because the statute is silent, we turn to the rules of procedure adopted by Maricopa County to be applied in all Commission proceedings. Rule 10.16 of the Maricopa County Employee Merit System Rules sets forth a standard of review that restricts the Commission's remedial powers to cases in which the action appealed from was "arbitrary or taken without reasonable cause."[4] That standard, applicable to the Maricopa County Commission,[5] was unchallenged by any party to these proceedings.

---

[4] Rule 10.16 states, in relevant part,

> If, after the hearing, a majority of the Commission members present at the meeting where the vote is taken determine that the action appealed from was *arbitrary or taken without reasonable cause*, the appeal shall be sustained; otherwise the appeal shall be dismissed.

(Emphasis added.)

[5] Both Maricopa and Pima Counties, by reason of population in excess of 250,000, are required by statute to create a "merit system council" (referred to in Maricopa County as a "commission") and to adopt "rules and regulations" to ensure orderly process and to "[h]ear and review appeals from any [disciplinary] order of the department head" brought by a merit system law enforcement employee. A.R.S. §§ 38-1002 to 1007 (2001). Rules adopted by counties for the orderly processing

6

¶11    In the instant case, the Commission acknowledged the Rule 10.16 standard — "arbitrary or taken without reasonable cause" — but strayed from its proper application. It reduced Juarez' termination to a fifteen-day suspension on the basis that discipline is necessarily "arbitrary and capricious" if it is "so greatly disproportionate to the offense . . . that it is shocking to one's sense of fairness." Merit Commission's Findings of Fact, Conclusions of Law and Order at 17.

¶12    The "shocking" standard, based on perceived disproportionality between the seriousness of the offense and the severity of punishment, is not found in any statute or rule

---

of merit system appeals vary among the counties. In a separate opinion issued today by this court, *Pima County v. Pima County Merit Sys. Comm'n*, ___ Ariz. ___, ___ P.3d ___ (2005), we address the Pima County merit system rule, the counterpart to Maricopa's Rule 10.16, which contains a "just cause" standard of review. Contrary to the Maricopa rule, the Pima County standard gives the council wide discretion to modify disciplinary action that the council, in its judgment, finds "too severe." Maricopa County did not grant its commission such broad latitude. As today's two opinions demonstrate, the divergent rules between counties may, and often will, produce divergent results on very similar facts. Nevertheless, because the statute is silent as to a standard of review, we conclude that either approach is consistent with the mandate in A.R.S. § 38-1003 that county merit system commissions adopt rules consistent with "recognized merit system principles of public employment." For a discussion of the meaning of that language, *see id.* at ___, ¶¶ 14-16, ___ P.3d at ___.

in Arizona and appears to have been a creation of court decisions. The dilemma this standard presents is that to determine whether a disciplinary order is "shocking to one's sense of fairness" calls for subjective analysis, effectively engaging the Commission in a determination of the appropriateness of a disciplinary action as measured against the seriousness of the offense, thereby opening the door to a substitution of the Commission's judgment for that of the MCSO. In contrast, Rule 10.16, given its plain meaning, creates an objective standard, requiring the employer's discipline be upheld unless "arbitrary or taken without reasonable cause." Rule 10.16 limits the Commission to a deferential role, requiring a determination within fixed legal parameters. Properly stated, the Commission's role is strictly an objective one. It requires deference to the appointing authority's decision in all cases in which the appointing authority has complied with the Rule 10.16 standard. Disposition of this case therefore depends on a correct understanding of what the Rule 10.16 standard is, and how it should be applied.

### III.

¶13    By way of background, we note that the Commission's initial task is to create a record and to ascertain the facts. Generally, the employer must prove the essential facts

8

warranting discipline by a preponderance of the evidence. The disciplined employee, of course, is entitled to challenge any or all factual assertions through his or her own evidence. When it is determined from the evidence that some level of discipline is warranted, the Commission then reviews the action taken by the appointing authority, not in a broad context requiring that the severity of discipline be measured against the seriousness of the offense, but in a narrow and deferential context under a Rule 10.16 analysis, whether the action, viewed objectively, was "arbitrary or taken without reasonable cause."

¶14     The terms "arbitrary" and "without reasonable cause" have been defined in our jurisprudence. In Arizona, "arbitrary action" has been characterized as "unreasoning action, without consideration and in disregard of the facts and circumstances." *Pima County v. Pima County Merit Sys. Comm'n*, 189 Ariz. 566, 568, 944 P.2d 508, 510 (App. 1997) ("*Mathis*") (quoting *Tucson Pub. Sch. Dist. No. 1 of Pima County v. Green*, 17 Ariz. App. 91, 94, 495 P.2d 861, 864 (1972) ("Green"). An "arbitrary" action is one taken "capriciously or at pleasure," or an action taken "without adequate determining principle." *Black's Law Dictionary* 104 (6th ed. 1990). Similarly, the phrase "without reasonable cause" indicates the lack of evidence sufficiently strong to justify a reasonable person in the belief that the

acts charged are true. *See Mathis*, 189 Ariz. at 568, 944 P.2d at 510 ("If the Merit Commission determines the evidence does not support the charge giving rise to the action taken, it must revoke the [disciplinary] order because the action taken was arbitrary or taken without reasonable cause.").

¶15    Both terms — "arbitrary" and "without reasonable cause" — require analysis by reference to these governing principles. The role of the Commission is thus limited as a matter of law. The Rule 10.16 standard does not permit the Commission to substitute its independent judgment simply on the belief that a reduced level of discipline would be more appropriate to the offense.

¶16    By imposing a fifteen-day suspension, the Commission obviously believed that some discipline was justified. That being the case, if the discipline originally imposed falls within the permissible range, it would be unlikely the action could be seen as arbitrary.[6]    *Ariz. Dep't of Corr. v. State*

---

[6]    Only in a rare situation can a punishment be found arbitrary when it falls within the permissible range. Arbitrariness can arise, for example, when similarly situated employees receive differing sanctions for the same offense. *See Pinal County v. Pinal County Employee Merit Sys. Comm'n*, 211 Ariz. 12, 18, ¶ 18, 116 P.3d 624, 630 (App. 2005) ("Serb"). Moreover, on admittedly rare occasions, a punishment could be so unreasonably disproportionate to the offense as to be arbitrary and without reasonable cause. *Cf. State v. DePiano*, 187 Ariz. 27, 31, 926 P.2d 494, 498 (1996) (noting that this Court's exercise of its statutory power to modify sentences

*Pers. Bd.*, 202 Ariz. 598, 600, ¶ 10, 48 P.3d 1208, 1210 (App. 2002).  Similarly, if the record contains credible evidence, either by admission or by sufficient proof, that the employee in fact committed acts warranting some level of discipline, it can scarcely be said that discipline within the permissible range was taken without reasonable cause.

**¶17**    Admittedly, reasonable minds may differ on the appropriateness of one discipline over another.  That people may differ, however, bolsters the notion that discipline, initially imposed within standards and policies set by the appointing authority, should not be disturbed merely because a reviewing body sees it as disproportionate.  In an earlier case, the court of appeals correctly explained the proper role of an administrative commission when providing review of an agency decision:

> In determining whether an administrative agency has abused its discretion by acting in an arbitrary and capricious manner, we review the record to determine whether there has been 'unreasoning action, without consideration and in disregard for facts and circumstances; where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even

---

within a permitted statutory range will only be exercised in a "rare" case and that "we had not seen such a case in years") (*overruled in part on other grounds, State v. Davis*, 206 Ariz. 377, 384, 79 P.3d 64, 71 (2003)).  Neither such circumstance is presented in this case.

though it may be believed that an erroneous conclusion has been reached.'

*Maricopa County v. Gottsponer*, 150 Ariz. 367, 372, 723 P.2d 716, 721 (App. 1986) (quoting *Petras v. Ariz. State Liquor Bd.,* 129 Ariz. 449, 452, 631 P.2d 1107, 1110 (App. 1981) and *Green*, 17 Ariz. App. at 94, 498 P.2d at 864).

¶18    The court of appeals majority in the instant case relied on *Gottsponer*.  There, a nurse employed at the Maricopa Medical Center was demoted and placed on a six-month performance review cycle.  150 Ariz. at 368-69, 723 P.2d at 717-18.    On appeal, the Commission reduced the nurse's discipline to a two-day suspension.  *Id.* at 369, 723 P.2d at 718.  The superior court affirmed the Commission's order.  *Id.* at 369-70, 723 P.2d at 718-19.

¶19    The court of appeals reversed and reinstated the employer's disciplinary order, correctly pointing out that the duty of the Commission is not to substitute its own judgment, but only to determine whether the appointing agency had abused its discretion by acting arbitrarily or unreasonably.  *Id.* at 370, 373, 723 P.2d at 719, 722.

¶20    Although the result in *Gottsponer* appears to be correct, the opinion contains the language of the "shocking to one's sense of fairness" standard that has led to confusion in subsequent decisions:

12

> [W]here the finding of guilt is confirmed and punishment has been imposed, the test is whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'

*Id.* at 372 (quoting *Petras*, 129 Ariz. at 452, 631 P.2d at 1107, and *17 Cameron St. Rest. Corp. v. N.Y. State Liquor Auth.*, 399 N.E.2d 907, 909 (N.Y. 1979)).  Viewed in context, this language was most likely an imprecise attempt at further defining the "arbitrary and without reasonable cause" standard.  That imprecision, while well intentioned, has unfortunately led to the Commission decision we review today, where the Commission in effect held, applying the "shocking" standard, that its collective sense of fairness could be substituted for that of the appointing authority.[7]

**¶21**      The standard, "shocking to one's sense of fairness," is not the test under Rule 10.16.  Indeed, that standard

---

[7]    *See also Serb*, in which Division Two of our court of appeals reviewed a Pinal County disciplinary order terminating a county detention officer for striking a fully restrained inmate.  The Pinal County merit commission, under a standard of review similar to the Maricopa County standard, ("arbitrary or taken without reasonable cause"), 211 Ariz. at 16 n.7, ¶ 9, 116 P.3d at 628, determined that the officer's termination was shocking to one's sense of fairness and that the termination should be revoked and the officer reinstated to his job.  The court of appeals disagreed and upheld the termination.  *Id.* at 19, ¶ 22, 116 P.3d at 631.  While, as in *Gottsponer*, the result appears to be correct, the court nevertheless approved the review standard that included disproportionality that is "shocking to one's sense of fairness."  *Id*. at 17, ¶ 15, 116 P.3d at 629.

13

conflicts with the rule in that it permits analysis by the Commission based on perceived disproportionality without deference to the appointing authority. Rule 10.16, on the other hand, is narrowly tailored and creates a standard that requires deference. The "shocking" standard, when applied as part of the Rule 10.16 analysis, effectively encourages the Commission to review the employer's discipline from its own perspective when the penalty happens to bother the individual consciences of Commission members. Such review process is inconsistent with Rule 10.16. Thus, to the extent *Gottsponer* and its progeny are inconsistent with the rationale of today's opinion, we disapprove of those decisions.

## IV.

¶22     The MCSO's discipline of Juarez fell within the permissible range set by its disciplinary policy and there was evidence to support it. There is no contention that the discipline was different from that imposed on similarly situated employees, nor can it be suggested that the discipline is so unreasonably disproportionate to the offense as to be arbitrary or without reasonable cause. The determination was made on the basis that Juarez lacked the self-restraint needed to work in close proximity to detainees. When an officer is unwilling or unable to use sound judgment concerning the level

14

of force required to maintain control of restrained detainees, the employer has discretion to impose discipline and to select the appropriate level. When that determination is made, the Commission, given Rule 10.16, may not then invoke the "shocking" standard that permits an independent judgment on the basis of disproportionality between the level of discipline and the seriousness of the offense.

¶23     We therefore hold that the Commission erred as a matter of law when it reversed the MCSO's dismissal of Juarez. We further hold that disciplinary appeals brought to the Commission in Maricopa County are to be reviewed under Rule 10.16 without reference to the standard, "shocking to one's sense of fairness."

### DISPOSITION

¶24     For the reasons set forth, the memorandum decision of the court of appeals is vacated and the judgment of the superior court is reversed. Because the Commission exceeded its legal authority, and because the decision to discharge Juarez was neither arbitrary nor taken without reasonable cause, we remand this matter to the superior court with instructions that the Commission be ordered to reinstate the discipline imposed by the MCSO.

15

¶25    Because Juarez is not the prevailing party in these proceedings, he is not entitled to attorneys' fees.  His motion for fees is denied.


_____
                          Charles E. Jones, Justice (Retired)
CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice

16