NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

MARICOPA COUNTY SHERIFF'S OFFICE, *Plaintiff/Appellee,*

*v.*

WALTER DUNCANSON, *Defendant/Appellant.*

No. 1 CA-CV 16-0651
FILED 10-26-2017

———————————————

Appeal from the Superior Court in Maricopa County
No. LC 2015-000404-001
The Honorable Patricia A. Starr, Judge

**AFFIRMED**

———————————————

COUNSEL

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, David Timchak
*Counsel for Defendant/Appellant*

Maricopa County Attorney's Office, Civil Services Division, Phoenix
By Brandon A. Newton, Douglas Arthur Schwab, Joseph Branco
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

---

D O W N I E, Judge:

¶1        Walter Duncanson appeals the superior court's judgment reversing a final decision by the Maricopa County Law Enforcement Officers Merit System Commission ("Commission"), thereby reinstating his demotion.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        The Maricopa County Sheriff's Office ("MCSO") initiated internal investigations into two separate incidents involving a deputy ("C.A."), whom Duncanson supervised.  The first matter involved C.A. taking custody of a minor child without a warrant or paperwork authorizing such action.  MCSO alleged that Duncanson approved C.A.'s written report regarding that incident without questioning or investigating C.A.'s actions, which were in violation of MCSO policy.

¶3        The second incident involved C.A.'s stop of a vehicle for expired registration.  The driver claimed she was a "sovereign citizen" and produced identification issued by the "Allodical American National." When C.A. insisted she give him the identification, the driver became irate.  C.A. arrested and handcuffed the driver, placing her in the back of his vehicle.  C.A. requested assistance, and Duncanson, another deputy, and a volunteer posse member responded.  While on the scene, Duncanson telephoned the Maricopa County Attorney's Office ("MCAO") for guidance on dealing with the driver.  During that call, the handcuffed driver became physically combative, requiring C.A. to obtain leg irons from Duncanson.  During a struggle to attach the leg irons, the posse member's arm was injured.  MCSO alleged that Duncanson, by remaining on the telephone, had taken himself out of position as a direct supervisor.

¶4        MCSO Deputy Chief Edward P. Lopez determined that Duncanson's conduct in connection with the traffic stop violated two MCSO policies and that his failure to review C.A.'s report regarding the child custody incident and take appropriate action also violated two

policies.  Lopez considered Duncanson's prior disciplinary history, which consisted of a 32-hour suspension in July 2014 for failing to "assume command of a critical incident by failing to provide direct supervision to deputies" at a homicide scene.  Concluding that Duncanson's "actions constitute a serious violation of departmental policies and regulations," Lopez ordered him demoted from Deputy Sergeant to Deputy.

**¶5**         Duncanson appealed to the Commission, which appointed a hearing officer.  After two days of hearings, the hearing officer concluded MCSO had proven that Duncanson's "inefficiency and neglect of duty warranted discipline" and that removing him from supervisory duties, "which required a demotion to deputy sheriff," was appropriate.  The hearing officer issued proposed findings of fact and conclusions of law.

**¶6**         The Commission adopted all of the hearing officer's proposed findings of fact and added one finding of its own: that MCSO lacked a policy "directing where a supervisor stands in proximity to a subject's vehicle during a traffic stop."[1]  The Commission also adopted the hearing officer's conclusion of law that Duncanson, by approving C.A.'s report about the child custody transfer without following up, violated MCSO policies "regarding taking appropriate supervisory action which therefore constitutes inefficiency and neglect of duty in violation of Maricopa County Law Enforcement Officers Merit System Resolution, Sections 15 (C) 3 and 5."  The Commission rejected the hearing officer's proposed conclusion that Duncanson committed policy violations relating to the traffic stop.

**¶7**         Despite having adopted all of the hearing officer's findings of fact, as well as the conclusion Duncanson violated established policies regarding the child custody incident, by a vote of 2-1, the Commission determined that MCSO had not proven the charges against Duncanson by a preponderance of the evidence and that his demotion was arbitrary and without reasonable cause.

**¶8**         MCSO sought judicial review.  The superior court ruled that the Commission's decision "was contrary to law and was arbitrary or capricious" and reinstated Duncanson's demotion.  Duncanson filed a timely appeal.  This Court has jurisdiction pursuant to Arizona Revised

---

[1]     As MCSO correctly notes, Duncanson was not disciplined for where he stood "in proximity to a subject's vehicle."

Statutes ("A.R.S.") sections 12-120.21(A)(1) and -913. *See Svendsen v. Ariz. Dep't of Transp.*, 234 Ariz. 528, 533, ¶ 13 (App. 2014) (Reference to "supreme court" in § 12-913 "has been construed as also allowing an appeal to the court of appeals, which was created after § 12-913 was enacted.").

**DISCUSSION**

**¶9**        We will uphold the Commission's decision unless it "is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12–910(E). We give deference to the Commission's factual findings, but we review *de novo* whether the Commission applied the correct legal standards in reaching its decision.[2] *Golob v. Ariz. Med. Bd.*, 217 Ariz. 505, 509, ¶ 11 (App. 2008) (court does not substitute its judgment as to factual matters); *Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 189, ¶ 7 (App. 2006) (court reviews agency's application of law *de novo*). The Commission has a "narrow and deferential" role in reviewing actions by an appointing authority. *See Maricopa Cty. Sheriff's Office v. Maricopa Cty. Emp. Merit Sys. Comm'n (Juarez)*, 211 Ariz. 219, 222, ¶ 13 (2005).[3]

**¶10**        The allegation stemming from the child custody incident was that Duncanson "approved [C.A.'s] report of the incident without criticism of [C.A.'s] actions and that [Duncanson] failed to open an investigation into [C.A.'s] actions." As to that incident, the Commission found:

---

[2]        Even assuming *arguendo* that the superior court erroneously articulated the standard of review at one point in its ruling, our review is *de novo*. *See Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13 (App. 2007) ("On appeal, we review de novo the superior court's judgment, reaching the same underlying issue as the superior court: whether the administrative action was not supported by substantial evidence or was illegal, arbitrary and capricious, or involved an abuse of discretion.").

[3]        Although *Juarez* interpreted the merit rules governing employees who are not law enforcement officers, the Commission's standard of review is the same. *See* Maricopa Cty. Emp. Merit Sys. Res. § 16.F., available at *https://www.maricopa.gov/DocumentCenter/View/427*.

> On January 16, 2014, [C.A.] investigated a child custody situation in which he took custody of a minor child and gave the child to the child's mother, even though no warrant had been issued to take physical custody of the child. [C.A.] completed a report which he submitted for [Duncanson's] approval. On January 25, 2014, [Duncanson] approved the report without comments about [C.A.'s] actions in the custody dispute.

The Commission also found that, when Duncanson was shown C.A.'s report during the internal investigation, he stated, "I don't know how I could have missed this," and said he would have "jumped all over this" and "never would have let this fly" had he recognized C.A.'s policy violations.

¶11        The Commission specifically concluded that Duncanson violated established policies vis-à-vis the child custody incident, stating:

> [Duncanson's] action in approving an incident report created by [C.A.] involving the custody transfer of a minor, which custody transfer was in violation of law and Sheriff's Office policies, where [Duncanson] did not initiate an investigation into such violations, constitutes a violation of Sheriff's Office policies, CP-2, GF-4, and GB-2, regarding taking appropriate supervisory action which therefore constitutes inefficiency and neglect of duty in violation of Maricopa County Law Enforcement Officers Merit System Resolution, Sections 15 (C) 3 and 5.

Because the Commission expressly found that Duncanson violated MCSO policies, we disregard its irreconcilably contrary conclusion that MCSO failed to prove its allegations regarding the child custody incident by a preponderance of the evidence.

¶12        As for the traffic stop, the Commission found that C.A. called for back-up, including a sergeant, after the driver "became angry and irate" and began "cursing and yelling at [C.A.]." Duncanson, another deputy, and a posse member arrived on the scene. The driver "began kicking and flailing her legs and she continued yelling and screaming." C.A. obtained leg irons from Duncanson while Duncanson was on the telephone, but C.A. and the posse member encountered difficulty attaching them because the driver "continued flailing around, trying to prevent the attachment of the leg iron." The Commission found that, "All

the while, [Duncanson] remained at his vehicle and did not approach [C.A.'s patrol vehicle] until after [the driver's] other leg was secured. During the struggle to attach the leg iron, [the posse member's] arm hit the cage and his arm began bleeding."

¶13 Chief Lopez testified without contradiction that in a use of force setting, a supervisor should be "closer to assist in the situation and observe; see and hear exactly what's going on in that confined space of the patrol car." Lopez also expressed concern that the detained driver's husband was "directly behind the deputy who was taking action in the patrol car," which he described as "concerning" from an officer safety perspective. Lopez testified that when force is deployed, "we have to follow policy to a T with our training, with our policies, and what is happening at the exact time it's happening." The Commission's own factual findings, coupled with the undisputed evidence of record, established that Duncanson committed neglect of duty and incompetency as to the traffic stop incident.[4]

¶14 Once the Commission found misconduct, it was required to uphold MCSO's chosen discipline "unless arbitrary or taken without reasonable cause." *Juarez*, 211 Ariz. at 222, ¶ 13. "A decision is not arbitrary and capricious if it is exercised honestly upon due consideration for facts and circumstances, even though there may be room for diverse opinions and it is believed that an erroneous conclusion has been reached." *Evans v. State ex rel. Ariz. Corp. Comm'n*, 131 Ariz. 569, 574 (App. 1982). The Commission may not substitute its judgment for that of the employer:

> [R]easonable minds may differ on the appropriateness of one discipline over another. That people may differ, however, bolsters the notion that discipline, initially imposed within standards and policies set by the appointing authority, should not be disturbed merely because a reviewing body sees it as disproportionate.

*Juarez*, 211 Ariz. at 223, ¶ 17.

---

[4] "Neglect of Duty" includes failure of supervisory staff to "provide proper direction, coordination, and control of subordinate personnel." "Incompetency" includes "the inability, unwillingness, or failure to perform assigned duties in an acceptable manner."

¶15 Although Duncanson contends demotion was outside the permissible range of discipline, the Commission made no such finding, and the record does not support that assertion. MCSO's discipline matrix establishes that for a second offense of a category 3 level, a non-exempt, regular-status employee such as Duncanson may be suspended for eight to 80 hours, and demotion is permissible if the conduct warrants an 80-hour suspension or more. The question of whether Duncanson's violations fell within matrix category 2 or 3 was not litigated below. However, evidence of record supports a category 3 designation. Category 3 encompasses "[c]onduct that has a pronounced negative impact on the operations or professional image" of MCSO, as well as conduct that falls within a lower category but is a repetitive offense. Examples of category 3 misconduct include "[f]ailure to take corrective action when warranted" and "[f]ailure to report improper activity or violation of a policy or procedure to a supervisor." In addition to the testimony recounted *supra*, Chief Lopez testified that Duncanson had demonstrated a "pattern of lack of supervision," and he stated that either incident, standing alone, was cause for demotion. "Only in a rare situation can a punishment be found arbitrary when it falls within the permissible range." *Juarez*, 211 Ariz. at 222 n.6, ¶ 16. This is not such "a rare situation."

¶16 Duncanson's contention that he received inadequate notice of the range of possible discipline is similarly unavailing. As noted *supra*, the disciplinary matrix authorized his demotion, and Chief Lopez advised Duncanson from the outset that MCSO was "considering taking disciplinary action against you in the form of a demotion." We also reject Duncanson's contention that MCSO failed to inform him that "the failure to conduct an internal investigation" into C.A. could lead to discipline. MCSO Policy GB-2, "Command Responsibility," requires supervisors to investigate unlawful or improper conduct of subordinates, and MCSO Policy GF-4, "Office Reports," requires a supervisor to review subordinates' reports and take action when major deficiencies are noted. Duncanson admitted failing to comply with these policies.

¶17 Although Duncanson argues his discipline was "inconsistent with the discipline imposed" on similarly situated employees, he did not make this argument during the administrative proceedings, and Appendix F to his opening brief is not part of the administrative record. *See DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 340 (App. 1984) ("The general rule is that failure to raise an issue before an administrative tribunal precludes judicial review of that issue on appeal unless the issue is jurisdictional in nature."). We therefore decline to consider this argument.

¶18 Finally, we are unpersuaded by Duncanson's reliance on the phrase "grave acts of misconduct" in MCSO's discipline policy. The section at issue states, in pertinent part:

> **Progressive Discipline:** In order to protect the integrity and reputation of the Office, discipline may be imposed as a corrective or punitive measure in response to an employee's misconduct or deficient job performance. Acts of misconduct or deficient job performance may warrant the use of progressive discipline. However, grave acts of misconduct may warrant suspension, demotion, or dismissal of an employee without previous counseling, reprimands, or other discipline. Accordingly, lesser discipline should generally be imposed first, unless the misconduct is of a more grievous nature.

If Duncanson had no prior disciplinary history, his argument might carry more force. But he was previously disciplined for inadequate supervision, and demotion here is consistent with stepping up the level of discipline for repetitive offenses. Moreover, Duncanson has not disputed the hearing officer's determination that demotion was required to remove him from supervisory duties.

## CONCLUSION

¶19 For the foregoing reasons, we affirm the judgment of the superior court. We deny Duncanson's request for an award of attorneys' fees and costs because he has not prevailed.



AMY M. WOOD • Clerk of the Court
FILED: AA