IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMY SILVERMAN, et al., *Plaintiffs/Appellees*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY,
*Defendant/Appellant*.

No. 1 CA-CV 22-0209
FILED 6-13-2023

Appeal from the Superior Court in Maricopa County
No. LC2021-000182-001
The Honorable Sally Schneider Duncan, Judge, *Retired*

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED**

COUNSEL

First Amendment Clinic
Public Interest Law Firm, Phoenix
By Gregg Leslie, Jacob Karr, Zachary Cormier, Adam M. Jackson (argued)
*Counsel for Plaintiffs/Appellees*

Richards & Moskowitz PLC, Phoenix
By William A. Richards (argued), Karen J. Moskowitz,
Natalya Ter-Grigoryan
*Counsel for Defendant/Appellant*

**OPINION**

Presiding Judge Brian Y. Furuya delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**F U R U Y A**, Judge:

¶1         The Arizona Department of Economic Security ("DES") appeals the superior court's order denying its motion to dismiss the complaint filed by Amy Silverman and TNI Partners ("Appellees") and entering judgment for Appellees. The order requires DES to disclose statutorily confidential records about vulnerable and disabled adults, finding Silverman, as a journalist, qualifies for the "bona fide research" exception to the records' confidentiality.

¶2         As explained below, we hold the record is not sufficiently developed to determine whether the journalistic activities at issue in this case constitute "bona fide research" and qualify for the statutory exception to confidentiality of records under Arizona Revised Statutes ("A.R.S.") § 46-460(D)(8). Further, even if Silverman's journalistic activities can qualify, A.R.S. § 46-460 vests discretion with DES to determine whether the disclosure of otherwise confidential records falls within the statutory exception. Because the record does not resolve whether DES acted arbitrarily or capriciously in exercising its discretion under the statute to deny Silverman's request, we hold the court also erred in granting judgment for Appellees. Thus, although affirming the order denying DES' motion to dismiss, we vacate the judgment for Appellees, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶3         Vulnerable adults are those unable to protect themselves from "abuse, neglect or exploitation by others because of a physical or mental impairment." A.R.S. § 46-451(A)(12). DES is statutorily authorized to investigate reports of abuse of vulnerable adults through Adult Protective Services ("APS"). A.R.S. § 46-451(A)(2), (10). To conduct its investigations, APS gathers relevant documents and creates reports documenting its progress. Because of the sensitive nature of these records, by statute, the legislature designated them confidential, generally preventing their disclosure. A.R.S. § 46-460(A). But the statute also contains a list of

exceptions permitting DES to disclose the records in certain enumerated circumstances, such as for "bona fide research." *See* A.R.S. § 46-460(D)(8).

¶4        Silverman is a freelance investigative journalist who works for the *Arizona Daily Star*, a newspaper owned by TNI Partners. She is researching how Arizona treats its citizens with developmental disabilities for a contemplated article. In May 2020, Silverman submitted a records request to DES seeking the production, in closed cases, of "[APS] reports, investigations and other materials that provided the data for APS quarterly reports from April 2019 to March 2020." Silverman did not explain the reason for her request, disclose any research methodology she intended to follow, explain how the records would aid her work, or delineate her plan to protect sensitive information from further disclosure other than that she would permit DES to redact "names and addresses."

¶5        DES denied Silverman's request, explaining it believed the records were confidential and statutorily protected from disclosure. Silverman renewed her request—adding a demand for all "incident reports received by the [Department of Developmental Disabilities]" in 2019—and asserted she planned to research how the State protects vulnerable citizens. DES also denied Silverman's renewed request.

¶6        Appellees then filed this case, asking the superior court to compel production of the records under A.R.S. § 46-460(D)(8)'s bona fide research exception. They alleged the records would help Silverman write news articles to "inform the public on the effectiveness of [DES'] services to citizens with disabilities." DES moved to dismiss pursuant to Arizona Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing Appellees' commercial journalistic endeavors did not qualify under the "bona fide research" exception. The court held oral argument and later denied DES' motion to dismiss. The same order sua sponte compelled DES to disclose the records. The parties, however, had not yet conducted discovery and did not request conversion of the motion to dismiss to a motion for summary judgment. Nor did the court provide any notice to the parties that it intended to resolve the motion to dismiss in this way.

¶7        Following entry of a final judgment reflecting this relief, DES timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I. Standard of Review

¶8        Typically, the "denial of a motion to dismiss is not a final judgment; we may review such orders only by special action and only in unusual circumstances." *State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235, 236 (App. 1995). But here, the superior court denied DES' motion to dismiss and, sua sponte, granted the relief requested by Appellees. This result effectively converted DES' motion to dismiss into a summary judgment and granted judgment in Appellees' favor. Accordingly, this court has appellate jurisdiction under A.R.S. § 12-2101(A)(1).

¶9        The court entered judgment without giving the parties notice of its intent to convert DES' motion to dismiss into a motion for summary judgment and without giving the parties a chance to present relevant material. Appellees contend DES waived any objection to doing so because DES did not oppose conversion in its briefing. But DES objected to the judgment at oral argument. Appellees have shown no waiver here.

¶10        We will therefore review the validity of the judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007).

¶11        We also review the superior court's interpretation of statutes de novo. *Pima Cnty. v. Pima Cnty. L. Enf't Merit Sys. Council*, 211 Ariz. 224, 227 ¶ 13 (2005).

### II. The Record is Insufficient to Determine Whether Silverman's Journalistic Activities Qualify as "Bona Fide Research" Under A.R.S. § 46-460(D)(8).

#### A. "Research" Must Have an Educational, Administrative, or Scientific Purpose.

¶12        Citizens generally have a statutory right to access public records. A.R.S. §§ 39-121 to -128. That broad right, however, is not without limitation. *See Carlson v. Pima Cnty.*, 141 Ariz. 487, 490 (1984). As relevant here, the legislature provided that records held by DES related to vulnerable adults are confidential and not subject to disclosure unless at least one statutory exception applies. A.R.S. § 46-460. One such statutory exception is that DES may disclose confidential records about vulnerable

adults to a researcher "engaged in bona fide research, if no personally identifying information is made available." A.R.S. § 46-460(D)(8). Arizona has no controlling authority on what qualifies as "bona fide research" sufficient to allow disclosure of vulnerable adult records.

¶13        "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 522 P.3d 671, 676 ¶ 31 (Ariz. 2023). We look first to a statute's plain language as the best indicator of its purpose and effect, giving all words used in the statute their ordinary meaning, interpreting different sections of a statute consistently, and giving meaning, if possible, to every word and provision so that none are made superfluous. *See Secure Ventures, LLC v. Gerlach in & for Cnty. of Maricopa*, 249 Ariz. 97, 99 ¶ 5 (App. 2020) (citations omitted).

¶14        Here, apparently based on the allegations in the complaint alone, the court ruled that Silverman's journalistic activities were "bona fide research," thereby qualifying her for an exception to the confidentiality prohibition against disclosure of DES records about vulnerable and disabled adults. DES argues Silverman's commercial journalistic activities cannot constitute "bona fide research," lest the exception be permitted to swallow the entire rule.

¶15        Appellees contend "bona fide research" should be construed broadly to apply to all who legitimately try to find answers to questions, including journalists like Silverman who are pursuing leads for a story. Indeed, some common definitions of "research" may be construed to support this understanding. *See In re Paul M.*, 198 Ariz. 122, 124 ¶ 7 (App. 2000) (holding we may refer to "established, widely respected dictionar[ies]") (citation omitted). For example, Merriam-Webster.com defines "research" as, among others, "studious inquiry or examination," "the collecting of information about a particular subject," "careful or diligent search," or "to search or investigate exhaustively." *Research*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/research (last visited June 6, 2023). Other accepted definitions, however, are at odds with Appellees' reading. For example, Black's Law Dictionary defines "research" as including "[s]erious study of a subject with the purpose of acquiring more knowledge, discovering new facts, or testing new ideas" and "[t]he activity of finding information that one needs to answer a question or solve a problem." *Research*, Black's Law Dictionary (11th ed. 2019).

5

¶16         Given the varying range of possible definitions, the meaning of "research" is ambiguous and we must apply other rules of construction to ascertain its meaning within A.R.S. § 46-460(D)(8). One such rule requires that "each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *McCaw v. Ariz. Snowbowl Resort*, 254 Ariz. 221, 226 ¶ 16 (App. 2022), *review denied* (May 2, 2023) (quoting *Pinal Vista Props.*, *L.L.C. v. Turnbull*, 208 Ariz. 188, 190 ¶ 10 (App. 2004)).

¶17         Here, accepting Appellees' proposed interpretation would impose such minimal requirements as to render the confidentiality protections in A.R.S. § 46-460(A) effectively meaningless. Under Appellees' construction, any person seeking information could be said to be conducting "research" — and therefore qualify for the exception — so long as that person is not engaging in fraud or deception. *See Bona Fide*, Black's Law Dictionary (11th ed. 2019) (defining "bona fide" as, among other things, excluding "fraud or deceit"); *Bona Fide*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/bona%20fide (last visited June 6, 2023) (defining "bona fide" as "neither specious nor counterfeit," "made with earnest intent," and "made in good faith without fraud or deceit"). Under such an expansive reading, the mere act of requesting disclosure of the protected documents might itself qualify as engaging in "bona fide research," rendering the records confidential only until someone asks for them. Such an interpretation is an absurd result, inconsistent with the purpose of the confidentiality statute, which we must avoid. *See Lake Havasu City v. Mohave Cnty.*, 138 Ariz. 552, 557 (App. 1983) ("Statutes must be given a sensible construction which will avoid absurd results.").

¶18         The legislature's choice of words in the subject statute makes the records Appellees seek confidential; providing such ready and broad access to them does not comply with the plain meaning of A.R.S. § 46-460. Consequently, we must reject the court's interpretation and adopt a narrower construction. We instead construe the "bona fide research" exception to further the statute's purpose of preserving the records' confidentiality. *Secure Ventures*, 249 Ariz. at 99 ¶ 5. Because the meaning of "bona fide research" in the context of confidential records of vulnerable and disabled adults is an issue of first impression in Arizona, we consider other jurisdictions that have wrestled with the issue for guidance. *See Branch v. State*, 15 Ariz. 99, 104 (1913) ("Where the wording of a statute is ambiguous and uncertain . . . cases from other jurisdictions construing a like statute or interpreting its words are persuasive and helpful.").

¶19          The New York[1] case DES cites is instructive. In *Newsday, Inc. v. State Comm'n on Quality of Care for Mentally Disabled*, 601 N.Y.S.2d 363, 365 (Sup. Ct. 1992), a New York trial court granted a motion to dismiss an action to compel disclosure of confidential child abuse records and held journalists were excluded from New York's "bona fide research purpose" exception. *Compare* N.Y. Soc. Serv. Law § 422(4)(A)(h) *with* A.R.S. § 46-460(D)(8). After noting reports similar to those being sought by Appellees in this case were "made confidential by other statutes," the *Newsday* court found bona fide research "should be construed as including academic, administrative or scientific research" and that the statute's purpose was "to restrict disclosure to those conducting scientific or psychological research." *Newsday*, 601 N.Y.S.2d at 364–65.

¶20          Because of the similarity between the statutes at issue, we find the New York court's approach in requiring an "academic, administrative or scientific" purpose persuasive. *Id.* at 365. However, we are concerned the limitation to "academic" purposes may be unduly restrictive. Some definitions of the word "academic" could be used to withhold access from those conducting research in vocational and commercial fields of study. *See e.g.*, *Academic*, Black's Law Dictionary (11th ed. 2019) ("1. Of, relating to, or involving a school or a field of study, esp[ecially] one that is neither vocational nor commercial, such as the liberal arts."). We see no reason to exclude those conducting bona fide research in vocational or commercial fields of study. Thus, unlike *Newsday*, we do not restrict potential researchers to only "academic" research purposes. Instead, we use the broader term "educational." *See Educational*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/educational (last visited June 6, 2023) (defining "educational" as describing, among other things, "the action or process of educating or of being educated"); *Educating*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/educating (last visited June 6, 2023) (defining "educating" as, among others, "to provide schooling for" and "to train by formal instruction and supervised practice especially in a skill, trade, or profession"). Therefore, we hold that the "bona fide research" exception of A.R.S. § 46-460(D)(8) is

---

[1]          DES directs us to *Seattle Times Co. v. Benton Cnty.*, 661 P.2d 964, (Wash. 1983) as persuasive. However, the *Seattle Times* court construed a statute substantially different in wording from A.R.S. § 46-460(D)(8), in that it expressly limited access to confidential records to "legitimate research *for educational, scientific, or public purposes*." Wash. Rev. Code § 13.50.010(8) (emphasis added). The specific limitations that qualify "legitimate research" within this statute make the *Seattle Times* court's analysis less helpful when interpreting A.R.S. § 46-460.

limited to "research" for educational, administrative, or scientific purposes. And we further clarify that, provided their work otherwise qualifies as research, journalists may qualify for the bona fide research exception under A.R.S. § 46-460(D)(8).

¶21 Accordingly, the bona fide research exception permits journalists to qualify for an exception to the ban on the disclosure of confidential adult records if their research otherwise qualifies. For example, a journalist's request may be eligible for the exception if their research serves a public purpose, such as informing the public of ways DES and APS could improve treatment and security of vulnerable adults. Such goals could be said to further educational or administrative purposes.

### B. "Bona Fide" Requires Descriptions of the Records Needed, the Purpose of the Research Project, and the Methodology to Preserve Confidentiality.

¶22 The legislature's inclusion of the phrase "bona fide" limits the word "research," and we must give that limitation meaning. *McCaw*, 254 Ariz. at 226 ¶ 16. In general, "bona fide" can mean "[m]ade in good faith; without fraud or deceit" and "[s]incere; genuine." *Bona Fide*, Black's Law Dictionary (11th ed. 2019). Thus, not every applicant that claims to be a researcher may obtain access to DES' confidential records about vulnerable adults. Those making disclosure requests without sufficient support or explanation that establishes their research is for educational, administrative, or scientific purposes may not qualify as "bona fide." *See Secure Ventures*, 249 Ariz. at 99 ¶ 5. Whether an applicant qualifies as a "bona fide" researcher is a fact question that will require DES and the court to examine all relevant factors related to the research, including—without limitation—its scope, objectives, and methodologies. But it stands to reason that there must be some means of evaluating whether a request satisfies the standard we articulate above.

¶23 Although we do not owe deference to an agency's interpretation of the law, we may find agency interpretations persuasive and will consider DES' historical interpretation of A.R.S. § 46-460(D)(8). *See* A.R.S. § 12-910(F). DES requires applications for disclosure of its records to meet several requirements. Researchers must have a detailed plan that shows how the research will help DES improve its operations, show the purpose and expected outcomes of the research, and show how they will maintain record confidentiality. The bona fide research exception in A.R.S. § 46-460(D)(8) does not require the researcher's research to benefit DES. But we find it reasonable to require that researchers provide detailed

descriptions outlining the specific information needed, the research's purpose and expected outcomes, and how they will maintain the confidentiality of the records.

¶24 Thus, to qualify as "bona fide" under the exception, prospective researchers must, at a minimum, provide detailed descriptions that outline: the specific information sought and the project's purpose, expected outcomes, and the methodology the researcher will employ to maintain the confidentiality of the records.

### C. The Record on Appeal is Insufficient to Determine Whether Silverman's Request Qualifies as Bona Fide Research.

¶25 In the present case, the court entered judgment for Appellees before the parties could conduct discovery or the court could take evidence. We thus do not know the purpose of Silverman's research project or her expected outcomes, which documents relate to her goals, the scope of her request, or her methodology to keep the information in the records confidential. DES' dismissal motion was inappropriate because Silverman's request may qualify for the bona fide research exception. But on this underdeveloped record, we cannot tell. *See Swift Transp. Co. of Ariz. L.L.C. v. Ariz. Dep't of Revenue*, 249 Ariz. 382, 385 ¶ 16 (App. 2020) (explaining that courts disfavor granting Ariz. R. Civ. P. 12(b)(6) motions). That said, we hold the parties must conduct discovery and present sufficient evidence before the court may enter judgment in either party's favor on this issue.

¶26 For that reason, the court correctly denied DES' motion to dismiss. The court erred, however, by granting judgment to Appellees.

### III. The Record is Insufficient to Evaluate DES' Defenses to Appellees' Motion to Compel.

### A. DES Has the Discretion to Determine Whether to Grant a Request Under A.R.S. § 46-460(D).

¶27 We note another concern that may arise on remand. The statute commends to DES the discretion to disclose its confidential records. On review of a DES decision, the court should affirm it unless DES acted arbitrarily or capriciously. Given the procedural posture of this case, we decline to determine whether DES acted arbitrarily or capriciously in denying the request.

¶28 As relevant here, A.R.S. § 46-460(A) makes the DES records at issue confidential and not subject to disclosure, "except as provided in

subsections B, C and D of this section." In turn, A.R.S. § 46-460(D) provides that DES employees "*may* release any information that is otherwise held confidential under this section . . . ." (emphasis added).

¶29 The statute's use of "may" as a modal verb "indicates permissive intent and a grant of discretion." *Garcia v. Butler in & for Cnty. of Pima*, 251 Ariz. 191, 194 ¶ 13 (2021). Thus, by its terms, the statute confers discretion upon DES in determining whether to disclose the records once an exception has been established. Obviously, DES cannot exercise its discretion arbitrarily or capriciously. *See Maricopa Cnty. Sheriff's Off. v. Maricopa Cnty. Emp. Merit Sys. Comm'n*, 211 Ariz. 219, 223 ¶ 17 (2005) (citations omitted). In reviewing DES' exercise of its discretion here, "we review the record to determine whether there has been 'unreasoning action,' without consideration and in disregard for facts and circumstances." *Holcomb v. Ariz. Dep't of Real Est.*, 247 Ariz. 439, 446 ¶ 26 (App. 2019) (quoting *Maricopa Cnty. Sheriff's Off.*, 211 Ariz. at 223 ¶ 17). A hypothetical example of such "unreasoning action" could be if DES were to deny a request for disclosure solely out of self-interest—as when a researcher submits a plan to investigate alleged negligence or incompetence by DES, and DES denies access to prevent embarrassing discovery and disclosures that might substantiate such allegations. In such a situation, denial based solely on self-interest would be arbitrary and capricious if the research otherwise qualified as bona fide research.

### B. The Record is Insufficient to Determine Whether DES Acted Arbitrarily and Capriciously in Denying Silverman's Request.

¶30 Here, because of the summary disposition, we also do not know whether DES has any potential defenses that may insulate its denial from being arbitrary and capricious. DES claims, for example, that the disclosure significantly burdens its resources because of the vast volume of documents requested. This could serve as a defense to the motion to compel, as A.R.S. § 46-460(D)(8) places the burden of redacting the records on DES. *See Hodai v. City of Tucson*, 239 Ariz. 34, 43 ¶ 27 (App. 2016) (explaining that an "unreasonable administrative burden" can justify the denial of a public records request). But we cannot know whether this burden is onerous enough to relieve DES from the disclosure order with no factual findings on the amount of labor required to fulfill the request or DES' resources to meet that need.

## CONCLUSION

**¶31** We affirm the portion of the court's order denying DES' motion to dismiss. We vacate the portion of the court's order entering judgment for Appellees. We remand to the superior court for further proceedings consistent with this opinion.

