NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ADRIANNA STINNETT, *Plaintiff/Appellee*,

*v.*

ARIZONA STATE VETERINARY MEDICAL EXAMINING BOARD,
*Defendant/Appellant*.

No. 1 CA-CV 20-0219
FILED 2-18-2021

---

Appeal from the Superior Court in Maricopa County
No. LC 2018-000429-001
The Honorable Douglas Gerlach, Judge (Retired)

**REVERSED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Mary DeLaat Williams, Michael D. Raine
*Counsel for Defendant/Appellant*

David G. Derickson PC, Phoenix
By David G. Derickson
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge David B. Gass and Judge David D. Weinzweig joined.

---

**B R O W N**, Judge:

¶1        The Arizona State Veterinary Medical Examining Board ("Board") appeals the superior court's order reversing the Board's disciplinary decision of Dr. Adrianna Stinnett for failure to use "professionally acceptable procedures" in violation of A.R.S. § 32-2232(12) and Arizona Administrative Code ("A.A.C.") R3-11-501(1).  For the following reasons, we reverse the superior court's order.

## BACKGROUND

¶2        Stinnett is licensed to practice veterinary medicine in Arizona. Late in the afternoon on August 14, 2017, Stinnett treated Rocky, an eight-year-old male Labrador, at Pet Urgent Care.  Earlier in the day, Rocky's owners had taken him to a different clinic, Shea Animal Hospital, and were referred to Pet Urgent Care.  The referring veterinarian recommended that Rocky have exploratory surgery "tonight, if possible" because he had ingested baby wipes a week earlier and had not eaten or had a bowel movement for several days.  According to Stinnett, that specific recommendation was not conveyed to her, and after consulting with Rocky's owners, Stinnett decided to conduct a "barium series" procedure. Based in part on her view of what the radiographs showed, she wanted to see if the baby wipes would pass naturally.

¶3        The next day Rocky's owners brought him back to Pet Urgent Care. Stinnett sent the radiographs to another veterinarian and he suggested surgery to "at least explore the abdomen."  At around 5:00 p.m., Stinnett performed the surgery.  She removed the baby wipes and discovered a tear in Rocky's bowel.  She suspected that intestine contents had leaked into his abdominal cavity.  Two days after the surgery, Rocky's owners took him to the veterinarian at Shea Animal Hospital.  Based on his declining condition, Rocky was referred to a third clinic.  There, the veterinarian determined Rocky was suffering from septic peritonitis. Rocky's owners decided to have him euthanized.  After speaking to their

veterinarian at Shea Animal Hospital about the services provided by Pet Urgent Care, they filed a complaint with the Board against Stinnett.

¶4        The Board's Investigative Committee submitted proposed findings of fact, explaining that "postponing the surgery was a poor choice" and if it had "been performed the night before, when it was expected to be done, the outcome may have been different." The Committee found "possible violations of the *Veterinary Practice Act* occurred" and recommended the Board find Stinnett committed gross negligence by postponing the surgery. *See* A.R.S. § 32-2232(11); A.R.S. § 32-2201(10) (defining gross negligence as "treatment of a patient or practice of veterinary medicine resulting in injury, unnecessary suffering or death that was caused by carelessness, negligence or the disregard of established principles or practices").

¶5        The Board conducted an informal interview and took testimony from Stinnett and one of Rocky's owners. *See* A.R.S. § 32-2234. The Board ultimately decided Stinnett was not grossly negligent, but it found discipline was appropriate because Stinnett failed to use "professionally acceptable procedures" in violation of A.R.S. § 32-2232(12) and A.A.C. R3-11-501(1) for misinterpreting the radiographs and missing a blockage pattern. After explaining its findings of fact and conclusions of law, the Board placed Stinnett on probation for one year, with the condition that she complete four hours of continuing education "in the area of radiographic interpretation focusing on the abdomen." Stinnett moved for a "rehearing or review" of the Board's decision, asserting in part the "evidence does not support the conclusion that [Stinnett] misinterpreted the radiographs or failed to provide professionally acceptable services." The Board denied her request.

¶6        Stinnett appealed the Board's decision to the superior court. She argued the decision was not supported by substantial evidence, the Board acted in an arbitrary and capricious manner, and A.A.C. R3-11-501(1) is unconstitutionally vague. After hearing oral argument, the superior court reversed the Board's decision, reasoning that the Board misread the statute and rule. Though the court found substantial evidence supported the Board's conclusion that "Stinnett misinterpreted radiographs and missed a blockage pattern when treating" Rocky, the court ultimately decided the Board's discipline order could not stand because the court was unable to determine the meaning of "professionally acceptable procedures." The Board timely appealed to this court.

## DISCUSSION

**¶7**         On appeal "we are not bound by the superior court's judgment because we review the same record." *Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 189, ¶ 7 (App. 2006). We will affirm the Board's decision unless it is "not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." *Id.* (citing A.R.S. § 12-910(E)). And we view the record in the light most favorable to upholding the Board's decision. *Lewis v. Ariz. State Pers. Bd.*, 240 Ariz. 330, 334, ¶ 15 (App. 2016). Still, statutory interpretation is a question of law, and we are not bound by the superior court's or Board's conclusions of law. *Siegel v. Ariz. State Liquor Bd.,* 167 Ariz. 400, 401 (App. 1991).

**¶8**         The Board was created "to protect the public from unlawful, incompetent, unqualified, impaired or unprofessional practitioners of veterinary medicine through licensure and regulation of the profession in this state." A.R.S. § 32-2207. Aside from adopting rules for "[m]inimum standards of veterinary practice," the Board is empowered to license, investigate, and discipline veterinarians. A.R.S. § 32-2207(1), (2), (6), (8)(a); *see also* A.R.S. § 32-2232 (listing 26 provisions describing "unprofessional or dishonorable conduct").

**¶9**         The Board may discipline a veterinarian for a "[v]iolation of the ethics of the profession as defined by rules adopted by the board." A.R.S. § 32-2232(12). The Board's administrative regulations provide more direction:

> Under A.R.S. § 32-2232(12), a veterinarian practicing under a license or permit shall practice according to the following standards of professional ethics, which are based on the Principles of Veterinary Medical Ethics of the American Veterinary Medical Association [("Principles")]. The breach of any of the following standards constitutes grounds for disciplinary action against a veterinary license or permit under A.R.S. §§ 32-2232 and 32-2234.

> 1. A veterinarian shall show respect for the veterinarian's colleagues, the owner of an animal to whom veterinary medical services are being provided, and the public through courteous verbal or written interchange, considerate treatment, professional appearance, professionally acceptable procedures, and use of current professional and scientific knowledge.

A.A.C. R3-11-501(1). "[P]rofessionally acceptable procedures" is not defined by statute or rule.

¶10 The Board argues the superior court erred in determining that "professionally acceptable procedures" does not provide enough of a standard on which the Board could base its discipline order. The court explained that it did not find the phrase "professionally acceptable procedures" unconstitutionally vague, or that it failed for lack of specificity. Instead, the court reasoned that the phrase is "defined only by what is stated in the Principles and not by a negligence standard of care or any other standard."

¶11 Stinnett argues that because the Board's ethical rules are drawn from the Principles, the phrase "professionally acceptable procedures" is merely an aspirational goal for the veterinary profession. She appears to acknowledge that the phrase creates an enforceable rule, but still contends it fails to give notice of "what 'procedures' are covered by the rule or what constitutes a 'procedure.'" Though the Board's rules could be clearer, the lack of greater or perfect clarity does not render the rules unenforceable. We enforce the plain language of an administrative rule if it is reasonably understood to prohibit certain conduct. *See Golob v. Ariz. Med. Bd.*, 217 Ariz. 505, 513, ¶¶ 29–32 (App. 2008) (noting that the legislature is not required to "define statutory terms with linguistic precision in order to withstand a vagueness challenge.") (citation omitted). In other words, if the rules are not unconstitutionally vague, then we will not presume they are unenforceable just because the Board could have used more precise language. *Id.* Thus, the superior court's unchallenged finding that "professionally acceptable procedures" is not unconstitutionally vague substantially undermines Stinnett's arguments.

¶12 The Board's rules should be interpreted to "further the statutory policy contained in its enabling legislation." *Cooke v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 141, 144, ¶ 13 (App. 2013) (quoting *Marlar v. State*, 136 Ariz. 404, 411 (App. 1983)). We therefore interpret "professionally acceptable procedures" to help the Board "protect the public from unlawful, incompetent, unqualified, impaired or unprofessional practitioners of veterinary medicine through licensure and regulation of the profession in this state." A.R.S. § 32-2207. We assume the Board "chose the phrase advisedly." *Yarbrough v. Montoya-Paez*, 214 Ariz. 1, 6, ¶ 19 (App. 2006). And the adopted standards may use general and broad terms. *Haggard v. Indus. Comm'n*, 71 Ariz. 91, 101 (1950).

¶13 This court has considered standards, framed in broad terms, in other licensed professions and determined those provisions include enough specificity to support discipline against the respective licensees. *See e.g., Ethridge v. Ariz. State Bd. of Nursing*, 165 Ariz. 97, 104 (App. 1989) ("The term 'unprofessional conduct' is a sufficient directive to guide the Board in its exercise of the delegated discretion."); *Webb v. State ex rel. Ariz. Bd. of Med. Exam'rs*, 202 Ariz. 555, 561, ¶¶ 24–26 (App. 2002) (concluding that a standard of "[a]ny conduct or practice that is or might be harmful or dangerous to the health of the patient or public" was not unconstitutionally vague); *Golob*, 217 Ariz. at 512, ¶¶ 27, 32 (declining to find unconstitutionally vague a standard that allows discipline of "[a]ny conduct or practice that is or might be harmful or dangerous to the health of the patient or the public"); *see also Angels Cremation & Burial, L.L.C. v. Ariz. Bd. of Funeral Dirs. and Embalmers*, No. 1 CA-CV 18-0439, 2019 WL 3430249, at *2 (Ariz. Ct. App., July 30, 2019) (concluding that a standard prohibiting "disrespect for the deceased person . . . contrary to the prevailing standards and practices of the profession in this state" was not unconstitutionally vague) (citation omitted). Thus, we conclude that A.A.C. R3-11-501(1) provides a permissible standard for which the Board may fairly base its discipline orders against veterinarians who fail to perform professionally acceptable procedures.

¶14 We also find the term "procedures" includes the actions here, including radiograph interpretation and surgical assessments. *See Procedure, Merriam-Webster's Collegiate Dictionary* (11th ed. 2014) ("a particular way of accomplishing something" or "a traditional or established way of doing things"); *Procedure, New Oxford American Dictionary* (3d ed. 2010) ("An established or official way of doing something. . . . A series of actions conducted in a certain order or manner."). Whether Stinnett read the radiographs consistent with what is considered professionally acceptable was a factual dispute for the Board to resolve.

¶15 We next consider whether substantial evidence supports the Board's decision that Stinnett violated the "professionally acceptable procedures." If the record supports two conflicting conclusions, then substantial evidence supports the Board's decision for both conclusions. *Webster v. State Bd. of Regents*, 123 Ariz. 363, 365–66 (App. 1979). A court may not "function as a 'super agency' and substitute its own judgment for that of the agency where factual questions and agency expertise are involved." *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336 (App. 1984) (citation omitted).

¶16    After reviewing all documents submitted and hearing the testimony presented at the informal interview, the Board concluded that Stinnett failed to provide professionally acceptable procedures because she misinterpreted radiographs and missed a blockage pattern. The record supports this conclusion. Stinnett testified that she chose not to do surgery because she wanted to explore other options, but several Board members explained that the radiographs she took showed surgery was necessary and should not have been delayed. Substantial evidence supports the Board's decision.

## CONCLUSION

¶17    We reverse the superior court's order and reinstate the Board's decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA